HAYDON et al., Appellants, v. ST. LOUIS & SAN
    FRANCISCO RAILROAD COMPANY, Respon-
    dent.

St. Louis Court of Appeals, February 27, 1906.

(Opinion by Bland, P. J.)

1. **PRACTICE: Stating Cause of Action: Objection to the Intro-
    duction of Evidence.**  Where a petition asking for equitable
    relief fails to show by affirmative averments that plaintiff is
    entitled to the relief prayed for and has no adequate remedy
    at law, an objection on that ground to the introduction of any
    evidence should be sustained.

2. **RESCISSION: Statu Quo: Equity.**  The rule that a party de-
    siring the rescission of a contract shall place the other party
    to the contract *in statu quo,* before bringing suit, applies to
    actions at law which are based upon the theory that the con-
    tract is already rescinded, but not to suits in equity brought
    for the purpose of rescinding.

3. ———: ———: **Offer to Restore.**  Plaintiff, having suits pend-
    ing against the defendant, a railroad company, for damages on
    account of the construction and operation of a switch in the
    street adjacent the plaintiff's property, entered into a contract
    of settlement with the defendant, whereby the latter paid
    the plaintiff a certain sum in full for all damages and paid the
    costs accrued, and the plaintiff by deed conveyed defendant the
    right to use the switch.  In a subsequent action brought by
    plaintiff to rescind the contract of settlement on account of
    violation of its terms by defendant, the plaintiff prayed also
    for damages and offered to give credit on the amount of dam-
    ages awarded for the sum paid in settlement of the former

suits, and the petition, containing a general prayer for equitable relief, was sufficient to support a judgment without containing a formal offer to put the defendant *in statu quo*.

4. ———: Breach of Covenant: Adequate Remedy at Law. The breach of a covenant in a contract which does not go to the whole consideration of the contract will not authorize a rescission because there is an adequate remedy at law in damages for the breach.

5. ———: ———: ———. The plaintiff and defendant, a railroad company, entered into a contract whereby the plaintiff granted the defendant, in consideration of a sum of money paid by it, the right to operate a switch on the street adjacent plaintiff's property, with the proviso that it was with the "distinct understanding" that the switch should not be used to stand or store cars thereon. The latter provision did not go to the whole consideration and was not a dependent covenant; an action to rescind the contract on account of the breach of that covenant would not lie, because there was an adequate remedy at law for damages.

(On motion for Rehearing, Opinion by Schnurmacher, S. J.)

6. ———: Dependent and Independent Covenants. Where conditions in a contract are mutual and dependent, a breach by one party will ordinarily entitle the other party to a rescission, but breach of a covenant which did not affect the consideration upon which the contract was based, when there was a remedy by action in damages, did not warrant a rescission.

7. ———: ———. Where plaintiff and defendant entered a contract whereby the plaintiff granted the defendant, a railroad company, the right to operate a switch in the street adjacent plaintiff's property, stipulating that it was with the "distinct understanding" that the switch should not be used to stand cars thereon, the stipulation was but an explanation showing to what the contract applied, and was not the consideration of the contract, though the plaintiff would not have entered the contract without it, and plaintiff could not maintain an action to rescind for breach of that stipulation.

(Dissenting Opinion by Nortoni, J.)

8. ———: Statu Quo: Offer to Restore. Plaintiff, having suits pending against defendant, a railroad company, for damages on account of the maintenance and operation of a switch by the latter in the street adjacent the plaintiff's property, entered into an agreement with the defendant whereby the defendant paid plaintiff a sum of money and the cost accrued in settlement of

all damages, and the plaintiff by deed granted defendant the right to maintain and use the switch. In a subsequent action brought by plaintiff to rescind the contract of settlement, on account of violation of the contract by defendant, wherein plaintiff prayed for general equitable relief, which the court could grant on equitable terms, it was not necessary in the bill to formally offer repayment of the costs of the former suit which defendant had paid.

9. ————: **Dependent Covenants.** The contract further stipulated that it was entered into with the "distinct understanding" that the switch should not be used to stand cars on, but should be kept open. This covenant by its terms went to the entire consideration, was dependent and without it the contract would not have been made, and an action to rescind would lie for its violation.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*W. A. Gardner* and *Guy D. Kirby* for appellants.

(1) A proceeding for a rescission of a contract is a different thing from one which is based upon a rescission. In a proceeding as for a rescission, a party may offer in his complaint to restore, unless he shows he is entitled to retain what he has received. And when a party seeking the aid of a court of equity to rescind a contract, offers to conform to such orders of the court as may be deemed just and equitable, his bill is not demurrable for a want of an offer to restore the consideration. Paquin v. Miliken, 163 Mo. 104, 63 S. W. 417, 1092; Lincoln Trust Co. v. Nathan, 175 Mo. 32, 74 S. W. 1007; Baier v. Berberich, 6 Mo. App. 537; Gould v. Bank, 86 N. Y. 80; Shuee v. Shuee, 100 Ind. 447; Allerton v. Allerton, 50 N. Y. 670. (2) The right to rescind a contract arises when the acts and conduct of one of the parties thereto evinces an intention not to be further bound by its terms, or if his acts amount to a rescission, had he power to rescind. Freeth v. Burr, L. R. 9 C. P.,

208; Mercy Steel & Iron Co. v. Naylor, 9 Mo. App. 442; Railroad v. Richards, 30 L. R. A. 33. (3) To determine whether the failure to execute an engagement will authorize the rescission of a contract, it is only necessary to consider whether it be such, that the contract would not have been made without it. Lucy v. Bundy, 9 N. H. 298; Moreau v. Charoni, 8 Rob. (La.) 157. Parol evidence is admissible to show contract would not have been made unless both parts had been agreed upon. Graves v. Scott, 80 Penn. St. 83.

*L. F. Parker* and *Woodruff & Mann* for respondent.

The petition does not state facts sufficient to constitute a cause of action in equity, and there is no equity in the bill or petition. (a) Because failure of consideration and breach of a contract, after his execution, are clearly no grounds for rescission. Paquin v. Milliken, 163 Mo. 79, 63 S. W. 417, 1092. (b) Because the petition shows upon its face that the entire controversy was heretofore settled, and $600 was paid as a consideration for the settlement, and defendant, also, under the terms of said settlement, paid the court costs of two suits then pending, and the petition further shows that no part of said $600 has been tendered back to defendant, neither has the amount paid as costs by defendant been repaid to it; and hence, for these reasons, plaintiffs are not entitled to recover in an action to rescind said contract. Robinson v. Siple, 129 Mo. 208, 31 S. W. 788; Smith v. Kander, 85 Mo. App. 33; Culbertson v. Young, 86 Mo. App. 277; Winter v. Cable Co., 73 Mo. App. 173-202; Alexander v. Railway, 54 Mo. App. 66; Girard v. Car Wheel Co., 123 Mo. 358-383, 27 S. W. 648; Och v. Railway, 130 Mo. 27, 31 S. W. 962; Retzer v. Dold Packing Co., 58 Mo. App. 264. (c) The rule that one is not bound to restore to the other party to a contract that which he has received under it when the other party is

indebted to him in a large amount; that in such case the sum compromised upon is at least due, and need not be returned, can have no application in a case where all liability is denied, as in this case. Gould v. Bank, 86 N. Y. 75. (d) Because if the contract set out in the petition or bill is one that can be sued upon by plaintiffs for the breach thereof, it must be by an action at law; plaintiffs have a plain, adequate and complete remedy at law for the breach thereof. Benton Co. v. Morgan, 163 Mo. 661, 64 S. W. 119; Planet Poop. & Finan. Co. v. Railroad, 115 Mo. 619, 22 S. W. 616; Verdin v. St. Louis, 131 Mo. 26-105, 33 S. W. 480, 36 S. W. 52; Merriam v. Railroad, 136 Mo. 145, 41 S. W. 1041; Bank v. Packing Co., 136 Mo. 59-93; Lackland v. Railroad, 31 Mo. 180; Swenson v. City of Lexington, 69 Mo. 157; Cross v. Railway, 77 Mo. 318; Rude v. St. Louis, 93 Mo. 408, 6 S. W. 257; Sheehy v. Cable Co., 94 Mo. 574, 7 S. W. 579; Gaus, etc., Mfg. Co. v. Railway, 113 Mo. 308, 20 S. W. 658; Spencer v. Railway, 120 Mo. 154, 23 S. W. 126; DeGeofroy v. Bridge Co., 179 Mo. 698, 79 S. W. 386; Tate v. Railroad, 64 Mo. 149; Meyers v. St. Louis, 8 Mo. App. 266; Martin v. Railway, 47 Mo. App. 452; Stephenson v. Railway, 68 Mo. App. 64; Farrar v. Electric Railway Co., 101 Mo. App. 140, 74 S. W. 500.

BLAND, P. J.—Omitting caption, the petition is as follows:

"Your petitioners for their third amended petition respectfully represent unto this honorable court that on the first day of September, 1899, they entered into a contract with the St. Louis & San Francisco Railroad Company, a corporation organized under the laws of Missouri, in words and figures as follows:

" 'Margaret C. Haydon and W. J. Haydon, her husband, plaintiffs, v. The City of Springfield and John F. Meyer & Sons, defendants.

" 'Margaret C. Haydon and W. J. Haydon, her husband, plaintiffs, v. The St. Louis & San Francisco Railroad Company and John F. Meyer and Sons, defendants.

"'Whereas, in the first above-entitled cause plaintiffs, on December 3, 1898, obtained judgment against said defendants, the city and Meyer & Sons, in the circuit court of Greene county, Missouri, for the sum of $100 and costs, for damages as set forth in said judgment, and from said decision defendants therein took their appeal to the St. Louis Court of Appeals on or about December 23, 1898, the transcript not having yet been sent to said appellate court.

" 'And whereas in said second entitled cause, plaintiffs instituted their suit against said St. Louis & San Francisco Railroad Company and said John F. Meyer & Sons' Milling Company in said circuit court of Greene county, Missouri, at the May term thereof, 1899, and said cause coming up for hearing on June 1, 1899, of said term, defendants filed application for change of venue therein and same granted to Webster county, Missouri, the transcript still in the office of circuit clerk of Greene county, and

" 'Whereas, depositions have since been taken by plaintiffs in said cause pending upon change of venue to Webster county and

" 'Whereas, all the litigation in said cause has arisen on account of the location by defendant railroad company and Meyer & Sons, of a railroad switch in front of plaintiff's property in Springfield, Missouri, described as follows:

" 'Beginning on the north side of Phelps avenue and east side of Peach alley at a point where said alley and street intersect; thence north on east side of Peach alley sixty-eight feet, thence east one hundred and eight feet, thence south sixty-eight feet; thence west on the north side of Phelps avenue to beginning, and also commencing twenty-three feet east of east line of above

117 App.—6

described real estate on north side of Phelps avenue; thence north sixty-eight feet; east twenty-three feet, south sixty-eight feet; west twenty-three feet to beginning, for damages accruing to said property and for injunction relief on account thereof.

" 'Now as a fair and complete settlement of all questions connected therewith, and full payment for all damages, past, present and prospective for the location and operation of said switch in front of plaintiffs' property, defendants, the railroad company and John F. Meyer & Sons, agree to pay the plaintiffs the sum of six hundred dollars as satisfaction in full for all damages aforesaid, and also to pay all costs and expenses attending said litigations and save said plaintiffs harmless on account thereof, and free from all costs necessary to be incurred for the final dismissal and settlement of said suits, and on account of said $600 paid to plaintiffs, receipt of which is hereby acknowledged and payment of costs as aforesaid, said plaintiffs grant and convey to defendants full power and authority to use said switch freely in front of their said property for railroad and milling purposes, but with the distinct understanding, that neither the milling company nor railroad company shall be permitted to use said switch in front of plaintiff's property to stand cars thereon, but that the switch in front of their said property shall be kept open and free from cars except when in actual use as aforesaid.

" 'This stipulation executed in duplicate, shall be a complete and full settlement of all questions connected and growing out of the establishment and operation of said switch as aforesaid.

" 'Given under our hands this first day of September, 1899.

" 'St. Louis & San Francisco Railroad Company,
" 'By J. T. WOODRUFF, Attorney.
" 'M. C. and W. J. Haydon, Plaintiffs,
" 'By G. W. S. Rathbun, Attorney.'

Haydon v. Railroad.

"Your petitioners allege that they have performed all on their part required by the terms of the above contract.

"Your petitioners further represent that in pursuance of said agreement, defendant paid to the plaintiffs the sum of six hundred dollars and the costs incurred in the above-mentioned litigation.

"Your petitioners further allege that by the agreement above mentioned, the plaintiffs granted to the defendant railroad company the power and authority to use said switch in front of said property upon the express condition (without which, said agreement would not have been made) that it would not use said switch to stand or store cars thereon, and that said switch was to be kept free and open from cars. But the plaintiffs allege that the defendant railroad company, wholly disregarding its obligation in this behalf, continued to stand and store its cars on said track in front of plaintiffs' said property.

"Your petitioners further allege that in pursuance of said agreement as a part thereof, they did, about the time said above-mentioned agreement was made, to-wit, on the thirteenth day of September, 1899, execute and deliver to defendant, a quitclaim deed, granting them the right to maintain and use said switch track in front of said premises, but not granting the right to store or stand cars thereon in front of said premises. But the plaintiffs say that no other consideration was given to or received by the plaintiffs for said deed than that given for the above-mentioned agreement and the plaintiffs say that no other rights were intended to be granted by said deed than those expressed by said above-mentioned contract, but that the rights and privileges granted by said deed were upon the same conditions as stated by said agreement.

"That is to say that said company was not to stand its cars in front of said property.

"Your petitioners further state, to-wit: About two years prior to the making of said agreement said railroad company had wrongfully and unlawfully built a switch and had been unlawfully standing its cars thereon in front of said premises and had thereby caused a depreciation of the rental of said property, and your petitioners had been damaged by the wrongful acts of defendant at the time of the making of the said agreement, to-wit: In the sum of fifteen hundred dollars and that the payment by said railroad company of the said sum of six hundred dollars was on account of the damages your petitioners had suffered by the wrongful acts of said company prior to the making of said agreement and was made with the distinct understanding that said cars of said defendant were not to be stood in front of said premises.

"Your.petitioners therefore ask that the said sum of six hundred dollars be regarded as part payment of so much as was really due by said railroad company to the plaintiffs at the time of the making of the said agreement, as your petitioners will fully show upon the trial of the issues herein was much more than said sum of six hundred dollars and petitioners offer to accept and do on their part, whatever equity requires in the premises.

"Your petitioners further state that they have been damaged by the wrongful acts of said defendant company in building the switch as aforesaid and keeping its cars standing in front of said premises from the time their tracks were laid as aforesaid, to the first day of November; A. D. 1902, the sum of three thousand dollars depreciation in the rental value thereof.

"Your petitioners further state that the placing of said cars in front of the premises aforesaid without the permission. of the plaintiffs, was a wanton and willful disregard of the duty of the defendants to the damage of

the plaintiffs in the sum of one thousand dollars for which they ask judgment.

"Your petitioners further say that they have been damaged by the wrongful acts of the defendant in the total sum of four thousand dollars.

"Your petitioners therefore pray this honorable court that it cancel and annul said agreement and deed and set the same aside and hold them for naught, that the said defendant may be required to pay the damages which have accrued to the plaintiffs because of the depreciation in the rental value of said premises, because of the building of said switch, and standing cars on said switch, in front of said premises, from the date of the laying of said tracks to the first day of November, 1902, as aforesaid, less six hundred dollars paid as aforesaid, and such punitive damages as this court may see fit to inflict upon the defendant because of the premises and such other and further relief as may be deemed just and equitable."

The answer admits that defendant is a railroad corporation but denies every other allegation of the petition.

The cause coming on for trial, plaintiffs offered W. J. Haydon as a witness in their behalf. Defendant objected to the introduction of any evidence for the following reasons:

"First, because said petition states no facts sufficient to constitute a cause of action in equity, and there is no equity in the bill or petition. . . .

"Third, because the contract sued upon, or attempted to be sued upon, in equity, contains no affirmative provision authorizing a suit on same, and that plaintiffs' cause of action, if any, is an action sounding in tort and not one in equity.

"Fourth, because if the contract set out in the petition or bill is one that can be sued upon for the breach thereof by plaintiff, it must be sued by law, and the

plaintiffs have a plain, adequate remedy at law for the breach thereof.

"Fifth, because said petition or bill states no grounds for equitable relief, in that it shows upon its face that the entire controversy was heretofore settled, and six hundred dollars was paid thereunder, and defendant also paid the costs of suits then pending and therefore pending, and no part of said six hundred dollars has been tendered back, neither has the amount paid as costs been repaid, hence for these reasons plaintiffs are not entitled to recover in an action to rescind the contract.

"Sixth, because the facts pleaded in the petition do not show grounds for rescinding the contract, but does contain facts which show affirmatively that the plaintiffs are not entitled to rescind the contract."

The court sustained the objection and plaintiffs took a nonsuit with leave to move to set the same aside. The motion to set aside the nonsuit was overruled by the court, and plaintiffs appealed.

1. It is the settled law that a petition asking for equitable relief must affirmatively show by a statement of facts that plaintiff is entitled to the equitable relief prayed for and that he has no adequate remedy at law or that he has a choice of remedies. Such allegations of facts are necessary to confer equitable jurisdiction, and if they are not found in the petition, advantage may be taken of their omission by the adverse party at any stage of the proceedings, or the court may of its own motion raise the objection. [Benton County v. Morgan, 163 Mo. 661, 64 S. W. 119.] Hence, the objections interposed by defendant did not come too late. They were in the nature of a special demurrer to the petition and will be considered from that standpoint.

A summary of the allegations of the petition shows that plaintiffs owned property in the city of Springfield, Missouri, fronting on Phelps avenue; that the defendant company unlawfully laid railroad switches in

the avenue in front of plaintiffs' property, whereby plaintiff was greatly damaged; that plaintiffs brought two suits, one against the city of Springfield and Meyer & Sons, and the other against the St. Louis & San Francisco Railroad Company and Meyer & Sons concerning the switches and to recover damages caused by their laying and use; that in one of the suits they recovered a small judgment from which an appeal was taken but not prosecuted; that the other suit was pending when, on September 1, 1898, the plaintiffs and the defendants settled both suits and agreed on the amount of damages plaintiffs had sustained by reason of the laying and use of the switches, and that they would in the future sustain by reason of the maintenance and use of the switches; that the damages so agreed on ($600) were paid plaintiffs and the suits were dismissed at defendant's cost; that plaintiffs executed a quitclaim deed to defendant to their interest in Phelps avenue (whatever that interest may have been) and defendant agreed not to use the switches in front of the plaintiffs' property by standing cars thereon, that their use should be confined exclusively to the moving of cars over them. It is further alleged that defendant has violated and continues to violate this clause of the contract by standing cars upon the switches in front of plaintiffs' property, causing great and daily accumulating damages to plaintiffs; that at the time plaintiffs accepted the damages agreed upon they had sustained actual damages in the sum of fifteen hundred dollars, a large portion of which they waived in consideration of the stipulation that defendant would not stand or suffer cars to stand on the switches in front of plaintiffs' property in the future.

The petition asks for the rescission of the contract and that plaintiffs recover all the damages which have accrued to them from the date of the laying of the switches down to the day of the commencement of the suit.

Plaintiffs failed to return or offer to return the six

hundred dollars paid under the terms of the contract of September 1, 1898. They seek to avoid the force of this omission by expressing their willingness for the sum to be deducted from the total amount of damages that may, on the final hearing, be adjudged to them.

The answer is a general denial, and if the contract of September 1, 1898, is cancelled, then there is nothing in the case showing or tending to show that defendant admits it has damaged plaintiffs in any sum whatever by the construction and use of the switches.

Plaintiffs rely upon the case of Girard v. St. Louis Car Wheel Company, 123 Mo. 358, 27 S. W. 648, as authority for the position that it is not necessary to return or offer to return what they had received on the contract as a condition precedent to their right to have the contract cancelled, and that they may allege the receipt of the money in their bill and consent that it may be set off against the amount of damages they claim to have sustained. The Girard case was an action for damages for personal injuries and defendant company pleaded a written release in consideration of the payment of a certain sum as compensation for the injury complained of. The reply confessed the execution of the release, but alleged that it was obtained by fraud and asked for its cancellation. The plaintiff did not return or offer to return what he had been paid. No objection was made by defendant on account of this omission and the record showed that the benefits received were accounted for in the judgment. On this showing it was held that the omission in the reply to tender back the benefits was non-prejudicial error. In the discussion of the necessity of the tender of the benefits received, BARCLAY, J., at page 372, said:

"It has been often held in other jurisdictions, that a tender of money (received by virtue of a release of similar tenor to that in question here) need not be made before bringing suit, where the release was obtained by fraud; but that it is sufficient to offer its return, and to

account for it by the judgment. [Duvall v. Mowry (1860), 6 R. I. 479; Smith v. Salomon (1877), 7 Daly 216; Butler v. Railroad (1891), 88 Ga. 594; Kley v. Healy (1891), 127 N. Y. 555; Sheanon v. Ins. Co. (1892), 83 Wis. 507; Kirchner v. Sewing Machine Co. (1892), 135 N. Y. 182; Railroad v. Acuff (1892), 92 Tenn. 26, 20 S. W. 348.]"

MACFARLANE, J., concurred in the result and wrote a separate opinion. BURGESS, J., wrote a dissenting opinion concurred in by GANTT, P. J., and SHERWOOD, J., in which it is said (l. c. 385.):

"If anything has been paid by the purchaser, although he obtain the property through fraud, before the vendor can recover it, he must restore whatever value he received to the purchaser.

"The parties should be put *in statu quo* as far as possible. [Stevens v. Hyde, 32 Barb. 171; McMichael v. Kilmer, 76 N. Y. 36; Graham v. Meyer, 99 N. Y. 611; Baird v. The Mayor, etc., 96 N. Y. 567; Tisdale v. Buckmore, 33 Me. 461; Camplin v. Burton, 2 J. J. Marsh. 216; Gifford v. Carvill, 29 Cal. 589; Estis v. Reynolds, 75 Mo. 563; Bisbee v. Ham, 47 Me. 543; 1 Bigelow on the Law of Fraud, pp. 73, 74.]

"When one has received anything of value on a settlement of a right of action and executed a release thereof, it follows inevitably that the contract of settlement, not being void, it constitutes an insuperable barrier against a recovery so long as it is rescinded or avoided by an offer to return the consideration paid for it. It was in principle so held in Insurance Co. v. Howard, 111 Ind. 544. It was there decided that it did not 'alter the case that the compromise may have been brought about by the fraud and misrepresentation of the defendant. Or that in the end it was found that a sum largely in excess of the amount paid to settle the disputed liability was due the plaintiff.' [See, also Brown v. Ins. Co., 117 Mass. 479.]"

If it be conceded that the opinion of BARCLAY, J.,

in the Girard case, correctly states the law, it does not support the contention of the plaintiffs. In the opinion of M'FARLANE, J., concurred in by BLACK, C. J., and BRACE, J., reply was not regarded as an equitable plea praying that the release be cancelled, but was treated as a plea at common law alleging that the release was obtained by fraud and holding it a proper plea under the rule given by Chitty that "to a bill of release, he (plaintiff) may reply *non est factum,* or that it was obtained by duress or fraud." [1 Chitty on Pleading (1 Am. Ed.), 608.] So it appears by the opinion of three of the judges that the omission to tender back the benefits received was not fatal to the reply on the ground that the reply alleged the release pleaded in bar of the suit was obtained by fraud. The doctrine of this case, in actions for personal injuries, has been incorporated into our Code of Civil Procedure by a new section (R. S. 1899, sec. 654.)

In Robinson v. Siple, 129 Mo. 208, 31 S. W. 788, on a review of the authorities, the court held that the failure of a party desiring to rescind a contract of sale to tender back the consideration of the sale and place the other party *in statu quo,* was an insurmountable barrier to his right to recover.

In Carson v. Smith, 133 Mo. 606, 34 S. W. 855, it was ruled: "Where one is induced to enter into a contract by reason of false and fraudulent representations, he can rescind the same only by placing the other party *in statu quo.*"

These were all actions at law, and there is a broad distinction between a bill in equity brought to rescind a contract and an action at law based upon the theory that it has already been rescinded. The distinction is well drawn in Gould v. Cayuga County National Bank, 86 N. Y. 75, where the plaintiff brought suit upon the theory that a contract, upon which he had been paid twenty-five thousand dollars, had been rescinded. Before bringing his suit he failed to put the other party *in statu quo*

by paying or offering to pay back the money he had received, though, pending the suit, he deposited the money, with interest, with the clerk of the court, to remain on deposit until final judgment, and to be restored to him unless the judgment should determine that the bank should recover it, in which event it should be awarded to the bank. The court held that the plaintiff could not maintain his suit for the reason he had not paid or tendered the twenty-five thousand dollars, before commencing the suit. At page 83, the court said:

"If this had been an action in equity to rescind the contract, the court could have done equity between the parties and so moulded its judgment as to accomplish that result. It could, if needful, have brought into the litigation matters pertaining to the trust created by Starin for plaintiff's benefit, and to that end could have ordered that Starin and the trustee be made parties. This action was brought as an action at law, no mention being made in the complaint of the compromise agreement or of the $25,000 paid to the plaintiff. A purely legal defense was set up; it was tried as an action at law, and no motion was made to convert it into an equity action.

"It is idle to say that the distinction between legal and equitable actions has been wiped out by the modern practice. It is true that all actions must be commenced in the same way; that in every form of action the facts constituting the cause of action or defense must be truly stated; that fictions in pleadings have been abolished, and that both kinds of actions are triable in the same courts. But the distinction between legal and equitable actions is as fundamental as that between actions *ex contracto* and *ex delicto,* and no legislative fiat can wipe it out." On the succeeding page it is said: "The difference between an action to rescind a contract and one brought, not to rescind it, but based upon the theory that it has already been rescinded, is as broad as a gulf."

In Paquin v. Milliken, 163 Mo. 79, 63 S. W. 417,

1092, a suit in equity, GANTT, J., in discussing the rule, that he who seeks equity should do equity, at p. 105, said:

"No more lucid exposition of the rule in equity has come under our observation than is found in the opinion of Chief Justice COOPER in Brown v. Norman, 65 Miss. 369. Referring to the dintinction between a rescission by the party himself as a basis of an action at law, he says: 'Since the law permits him to reacquire this legal right, by his own act, it puts upon him the necessity of restitution of the thing received by him as a condition of the exercise of the right to avoid the contract. From necessity, the law knows nothing of compensation but requires restoration of the thing received, for to permit the plaintiff to determine what would be just compensation would be to make him judge in his own case. But in equity the complainant does not necessarily rescind and sue; he may sue for rescission. He is required to restore the consideration, not however as a condition of acquiring the right to sue but because of the equitable maxim that he who seeks equity must do equity.' "

Under the head of "Cancellation of Instruments," Story says: "Courts of equity act upon an enlarged and comprehensive policy; and therefore in granting the relief they will impose such terms and qualifications as shall meet the just equities of the opposing party." [2 Story's Equity Jurisprudence, sec. 707.]

In Whelan v. Reilly et al., 61 Mo. 565, Judge SHERWOOD, after quoting the rule that he who seeks equity must do equity, and after citing instances where it should be applied, at page 570, says: "The above are only a few out of a large number of examples which might be cited in illustration of the rule referred to, which finds its application, not in questions of pleading, nor by what the plaintiff offers to do therein, but in the form and frame of the orders and decrees, both interlocutory and final, whereby equitable terms are im-

posed as a condition precedent to equitable relief granted."

Barker v. Wallace, 8 Beav. 92, was a suit to cancel a life insurance policy on the ground that it had been obtained by false and fraudulent representations. Premiums had been paid on the policy by the assured. The plaintiffs did not make a tender of the premiums before bringing the suit. On this ground, a demurrer to the bill was filed. The prayer of the bill was that the policy might be delivered up to be cancelled, or that the plaintiffs might otherwise be relieved, in such manner as the court might think fit. This was held sufficient and the demurrer was overruled. Substantially the same ruling was made by Lord Selborne, L. C., in Jervis v. Berridge, 8 Chan. App. Cases 351.

In their petition plaintiffs ask that the six hundred dollars paid be regarded as part payment of the damages alleged to have accrued to them. The rescission of the contract would as to the parties thereto, have the effect to expunge from the records of the Greene Circuit Court the judgment for one hundred dollars plaintiffs recovered of the city of Springfield and the milling company, and also plaintiffs' suit against the defendant railroad company and the milling company, pending at the time the contract was made, and likewise to cancel the deed made by plaintiffs to defendant and thus to reopen the entire controversy between the plaintiffs on the one side and the defendant, the city of Springfield and the milling company on the other, in respect to the laying of the tracks in the street in front of plaintiffs' property and the operation and standing of cars thereon, and necessitate a new inquiry as to the damages caused thereby. Not only the six hundred dollars paid by plaintiffs, but the costs, also accrued and paid by defendant in the two suits, should be offset against any damages to which plaintiffs may be entitled. In their petition plaintiffs ask that the six hundred dollars paid to them be regarded as part payment of the damages, but no mention

is made of the costs paid by the defendant. It seems to me that when plaintiffs offered to do equity, they should have offered to do complete equity by asking that the costs paid, as well as the six hundred dollars, be regarded as part payment of their damages. But it is contended that it is not indispensable that plaintiffs should make a formal offer in their petition to put the opposite party in *statu quo,* that the chancellor, on the hearing, will make such orders and render such judgments, interlocutory and otherwise, as the equities of the case may require. It is true, that it was not indispensable that plaintiffs should have formally offered to restore to defendant what it paid out on the contract and that the chancellor may, on the hearing, adjust the equities between the parties, by such decrees as to him may seem proper. But when plaintiffs by their bill offer to do equity, they should not have stopped short of offering to do complete equity. The petition should, in any view of the case, have put the chancellor in possession of all the facts within the knowledge of the plaintiffs and, as the petition shows on its face the existence of facts, the payment of costs in the possession of the plaintiffs or easily ascertainable by them, which the chancellor should know, and must know to do complete equity between the parties, plaintiffs should have stated these omitted facts. This criticism, however, does not go to the sufficiency of the petition to state a cause of action, and I do not think the petition is open to the objection, that it fails to state a cause of action for the reason it does not offer to restore to the opposite party what plaintiffs received on the contract and what defendant paid out on the contract. The petition is sufficient to support a judgment if the facts alleged bring the case within the jurisdiction of a court of equity.

The jurisdiction of a court of equity to rescind or cancel a contract or other solemn instrument is exercised for fraud actual or constructive, on account of mistake or oppression, or where the signature of the

complaining party to the instrument was obtained by duress or undue influence, or where it is against conscience for the party holding the same to retain it. Pomeroy says: "The occasion giving rise to the exercise of this jurisdiction (to cancel or rescind a contract) are mistake, fraud, and other instances where enforcing instruments or agreements would be inequitable or unjust." [4 Pomeroy's Equity Jurisprudence, sec. 1377.] It is nowhere alleged in the petition that the contract is voidable for mistake, fraud, duress or that plaintiffs' signatures were procured by undue influence. The sole ground relied on for its cancellation is that a part of the consideration moving from defendant to plaintiffs, inducing them to enter into the cotranct, was defendant's covenant that it would not in the future stand cars on its tracks in front of plaintiffs' premises, and that defendant has broken this covenant. The breach alleged does not go to the whole of the consideration for the contract, and for this reason does not authorize a rescission by either party. The covenant, not to stand its cars upon the tracks in front of plaintiffs' premises, is not a mutual, dependent covenant, for the reason it does not go to the whole of the consideration of the contract and plaintiffs have an adequate remedy at law for damages for its breach. [Butler, Admr., v. Manny, 52 Mo. 506; Turner v. Mellier, 59 Mo. 526.] As was said by Lord MANSFIELD, in a note to Duke of Albans v. Shore, 1 H. Bl. l. c. 273: "The distinction is very clear, where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But where they go only to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent." [See, also, Central Appalachian Co. v. Buchanan, 73 Fed. l. c. 1012.]

In Union Pacific Ry. Co. v. Ins. Co., 49 U. S. App. at page 759, the court said: "But a breach of the covenant of the second class, a covenant which does not go to

the whole consideration of the contract, but is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract or put an end to the agreement, but the injured party is still bound to perform his part of the contract, and the only damages he can recover consist in the difference between the amount which he actually received or lost and the amount which he would have received or lost if the broken covenant had been kept. [Pordage v. Cole, 1 Saund. 320, note; Campbell v. Jones, 6 T. R. 570, 573; Surplice v. Farnsworth, 7 Man. & Gra. 576, 584; Obermyer v. Nichols, 6 Binney, 159, 160, 164; Burnes v. McCubbin, 3 Kan. 221, 226; Butler v. Manny, 52 Mo. 497, 506; Turner v. Mellier, 59 Mo. 526, 536; Pepper v. Haight, 20 Barbour 429, 440; Central Appalachian Company, Limited, v. Buchanan, 43 U. S. App. 265.]" [See also Kauffman v. Reader, 54 L. R. A. 247, s. c., 108 Fed. 171.] These are law cases but they show, if citation of authorities is necessary in support of so plain a proposition, that plaintiffs have an adequate remedy at law for the breach of the covenant of which they complain. Reduced to its last analysis, the petition seeks a rescission of the contract on the sole ground that when it was made, plaintiffs accepted a less sum as compensation for the damages then accrued than was justly due them, and for this reason the compromise settlement should be rescinded. The law favors compromises and settlements of disputes; the policy of the law being that there should be an end of disputes. [Mateer v. Railway, 105 Mo. 320, 16 S. W. 839.] That equity will uphold compromise settlements, when fairly entered into, was ruled in Faust's Admx. v. Birner, 30 Mo. 414. The petition does not allege that any unfairness entered into the making of the compromise settlement, nor does it state any other ground for equitable relief. I think, therefore, the learned trial judge correctly ruled that the petition stated no cause of action.

I think the judgment should be affirmed.

ON MOTION FOR REHEARING.

SCHNURMACHER, S. J.—The court having agreed with the contention of plaintiffs that a restora- tion of the six hundred dollars received by them from defendant and of the court costs paid by defendant was not a necessary prerequisite to confer upon plaintiffs the right to sue, the only question left for consideration and determination upon this motion is whether the peti- tion states facts constituting an equitable cause of ac- tion in favor of plaintiffs. If it does, then the circuit court erred in sustaining the objection of defendant to the introduction of any evidence and the motion now made should be sustained. If, on the other hand, no such case is presented by the petition, the action of the court in excluding all evidence was proper and the motion should be overruled.

From the averments of the petition, it appears that on September 1, 1898, in consideration of the payment by defendant of six hundred dollars, and the payment by defendant of the costs of the litigation referred to in the compromise agreement, which agreement is set forth in full in the petition, plaintiffs released defendant from all damages, past, present, prospective, resulting from the location and operation of the switch in front of their property; and upon the same consideration plaintiffs who, as is disclosed by the petition, had theretofore denied the right of defendant to maintain said switch and had instituted proceedings to enjoin such maintenance and to recover damages therefor, granted and conveyed to defendant and the milling concern whose property was reached by the switch, "full power and authority to use said switch freely in front of their said property for railroad and milling purposes." Thus plaintiffs, in con- sideration of said payments, gave their consent to the location and continued operation of the switch, so far as they could do so, and treated the payments so made as

satisfaction in full of all damages sustained up to September 1, 1898, and in full satisfaction of any damages they might thereafter sustain in consequence of the location and operation of the switch. To guard, however, against the assertion that they were granting or yielding their assent to the use of the switch for purposes other than the ordinary movement of cars thereon, the provisions above quoted were immediately succeeded by the following: "but with the distinct understanding that neither the milling company nor railroad company shall be permitted to use said switch in front of plaintiffs' property to stand cars thereon, but that the switch in front of their said property shall be kept open and free from cars except when in actual use, as aforesaid."

The petition alleges that without this qualification, the contract of compromise would not have been made, and that, notwithstanding the same, and in violation thereof, the defendant has "continued to stand and store its cars on said track in front of plaintiffs' said property."

There is nowhere in the petition any suggestion that plaintiffs were overreached or defrauded into signing the contract of settlement, by misrepresentations or otherwise, nor is there any complaint that the agreement was the result of any mutual mistake. Its rescission is demanded by plaintiffs solely on the ground that since it was made cars have been allowed to remain on the switch in front of their property, in violation of its terms.

The argument of plaintiffs proceeds on the theory that the contract was made and based upon the undertaking of defendant not to stand or store cars on the switch; that such undertaking was a condition precedent to the agreement of plaintiffs and that the agreement of plaintiffs to accept the six hundred dollars in satisfaction of all damages by them theretofore or thereafter sustained, by reason of the location and operation of the switch track, on the one hand, and the obligation

of defendant not to permit cars to stand or be stored thereon, on the other hand, are covenants which are mutual and dependent on each other and that a violation by defendant of the latter authorizes a decree of rescission of the compromise arrangement at the suit of plaintiffs.

Giving full force to the averment that the settlement would not have been made by plaintiffs in the absence of the qualification concerning the standing or storing of cars, is it true that these provisions of the contract are dependent, or that the qualification goes to the entire consideration? Assuming, in other words, as averred, that the contract would not have been made without the presence of the qualification, does the admission by defendant that cars have since been allowed to stand on the switch, entitle plaintiffs to equitable relief, or is their remedy in a court of law?

Plaintiffs rely on the principle that where conditions in a contract are mutual and dependent, a breach or default by the one party will ordinarily entitle the other to a rescission or annulment of the contract. Of the correctness of this general proposition, there can be no question. [Lincoln Tr. Co. v. Nathan, 175 Mo. 32, 74 S. W. 1007; Farmers' Loan and Tr. Co. v. Galesburg, 133 U. S. 156; Grand Haven v. Grand Haven Water Works Co., 99 Mich. 106; Pironi v. Corrigan, 47 N. J. Eq. 135.]

Thus, in the case of Lincoln Trust Co. v. Nathan, 175 Mo. 32, an action for rent by the lessor, it was held that the lessee, on an answer in the nature of a cross-bill, might have a decree rescinding the lease and a judgment for the return of certain rents paid, it appearing that the improvements on the demised premises had been destroyed by fire and that the lessor, in breach of his covenants, had failed to rebuild within a reasonable time.

The case of Farmers' Loan and Trust Co. v. Galesburg, 133 U. S. 156, was a proceeding by the city of

Galesburg against the Galesburg Water Company for an annulment of a contract of the latter to furnish water to the city and its inhabitants and to revest in the city the property in certain water mains, etc. The bill for relief was based on the contention by the city that the company, in violation of its contract, was not furnishing the city water which complied with the requirements of the ordinances on which the contract was made, either in quantity or quality, or before or after the time prescribed in the contract for the successful completion and operation of the works; that the water which was furnished was filthy, polluted, stagnant and wholly unfit for use and dangerous to health and life. On its petition the Farmers' Loan and Trust Company, trustee in a mortgage to secure bondholders, was permitted to become a party to the proceeding.

Against the position of the city it was urged that the default of the water company was not concerning any condition precedent and gave the city no right to a decree rescinding the contract. From a decree of rescission an appeal was taken. The Supreme Court, in disposing of this particular feature of the case, made use of the following language:

"The principal contention on the part of appellants is that on the acceptance of the ordinance by Shelton, a right in the franchise vested in him, which could not be defeated, even though he afterwards failed to comply with its terms; that the failure of the water company to furnish water in the quantity and of the quality called for by the ordinance was only a breach of a condition subsequent; and that a court of equity will not lend its aid to divest an estate for such a breach; but it seems to us that in respect to a contract of the character of the present one, the ability of a water company to continue to furnish water according to the terms of the ordinance was a condition precedent to the continuing right of Shelton and his assigns to use the streets of the city and to furnish water for a period of thirty years; and that

when, after a reasonable time, Shelton and his assigns had failed to comply with the condition as to the quantity and quality of the water, the city had a right to treat the contract as terminated and to invoke the aid of a court of equity to enforce its rescission. A suit for a specific performance of the contract, or a suit to recover damages for its non-performance, would be wholly inadequate remedy in a case like the present."

The case of Grand Haven v. Grand Haven Waterworks Co., 99 Mich. 106, cites and follows the Galesburg case in a somewhat similar proceeding, where the city of Grand Haven filed its bill for the rescission of a contract with the waterworks company, on the ground mainly that the water supply agreed to be furnished was inadequate, the pressure insufficient and the quality unwholesome. The court quotes liberally the language of the United States Supreme Court in the foregoing case and declares the two cases to be on "all-fours."

These cases illustrate the principle on which plaintiffs seem to rely. Has the doctrine of these cases any application to the present facts? For, after all, "the only principle to be extracted from the numerous cases in relation to the dependence or independence of covenants is that they are to be construed according to the intention and meaning of the parties and the good sense of the case." [Freeland v. Mitchell, 8 Mo. 489.]

The contract in question is before the court. Its language is plain and free from ambiguity. There would seem to be no difficulty in arriving at its meaning, and through it the intention of the parties to this litigation.

Plaintiffs were maintaining in the courts that defendant's location and operation of the track were without sufficient legal warrant. They were seeking both damages and injunctive relief. They had recovered a small judgment against the milling firm in whose interest the track was constructed and against the city of Springfield. This action was pending on appeal. An-

other action against the milling firm and this defendant was pending in the trial court. They were willing, if defendant paid the costs accrued in these cases, and paid them six hundred dollars besides, to accept these payments in full satisfaction and discharge of all claim for damages up to that time sustained and in full of all claim they might make for damages in the future, consequent upon the construction of this switch and its operation in the ordinary way; and, moreover, they were willing, so far as they could, to confer on defendant the right to continue to maintain and use the switch. But they were not willing if, at any time thereafter, the railroad company should use the track otherwise than for the ordinary movement of cars, that is to say, for the storage of cars, to leave their contract open to the interpretation that they had been compensated in advance for any damages which might be occasioned by such use.

Therefore, as is obvious from the context and from all the terms of the document in question, words were inserted negativing the thought that plaintiffs were authorizing such use of the track. It is as though plaintiffs had said to defendant: "If you will pay the costs of the pending litigation and pay us six hundred dollars, we will not only accept such payment in satisfaction of all past and future damages, but will sanction the location of the switch and its continued use; but in saying this, we want it distinctly understood that we are not agreeing that cars may be allowed to *stand* thereon; on the contrary, if they are, any damage that may ensue from such action is not embraced in this settlement and we shall be free to hold you responsible therefor."

If this is the proper interpretation of the contract, then, conceding that plaintiffs would not have made the settlement but for such reservation, the defendant's violation of its terms does not affect the validity of the settlement nor even the consideration upon which it was based. At most, it amounts only to a breach of contract arising subsequent to its execution, for which plaintiffs

may have their action for damages. In this respect it resembles one feature of the case of Paquin v. Milliken, 163 Mo. l. c. 102, 63 S. W. 417, 1092, concerning which it was said:

"The answer to the suit on the note, then, upon its face only pleaded a failure of consideration and breach of the contract *after its execution.* The said allegations were clearly no ground for rescission, as the counterclaim was only based on the efforts of defendant *after the sale,* to decry and destroy the good will of the property he had sold the plaintiffs."

The contention of plaintiffs amounts merely to an assertion that if defendant had insisted on providing in the settlement and agreement that the payment of costs and the six hundred dollars should be deemed to cover future damages from standing cars in front of the property of plaintiffs, they would not have entered into the agreement. Giving the agreement the interpretation that plaintiffs have not compromised or released their right to claim damages, if any, resulting from the conduct of defendant in permitting cars to stand in front of plaintiff's premises, and all their rights are fully preserved and protected. But the enforcement of those rights can be had in an ordinary action for damages at law. It may well be true, and for the purposes of this discussion it must be taken to be true, that without the "distinct understanding" plaintiffs would not have entered into the compromise; that they would not have signed the agreement if it had been left open to the imputation that it embraced future damages from the standing of cars—but how does that aid in the solution of the question, if the "distinct understanding" was merely an *explanation* and not a covenant?

The facts of this case make it unlike the case of Lincoln Trust Co. v. Nathan, where, as already shown, a lessor in default respecting a covenant to rebuild, was seeking to enforce the payment of rent by a lessee under a covenant which was *dependent* on the performance of

the lessor's own covenant. The court there speaking of the two covenants said:

"The obligation of the lessors to rebuild is stated first, and the performance is required as a primary and precedent duty to any liability, and the lessee's obligation to pay rent during that time is based upon the express consideration that the premises shall be rebuilt in a reasonable time and the lessees put into occupancy as soon as possible. The covenants are therefore as clearly dependent as if they had been declared to be so, in so many words, and the lessee's liability to pay the rent depends upon the *prior* liability of the lessors to rebuild."

The rule thus referred to can have no application to the contract here under discussion. The defendant agreed to pay and did pay a certain sum of money to plaintiffs. In consideration thereof plaintiffs released defendant from all claim for damages for the maintenance and operation of the switch. There was nothing further for defendant to do. There was no prior condition to fulfill. But to guard against any future contention by defendant that it had compensated plaintiffs for damages which might arise from standing cars in front of their property, it was recited in the agreement as the "distinct understanding" of the parties that no such meaning should attach to their agreement. In other words, the language relied on by plaintiffs was not intended to nor did it create any obligation on the part of defendant, in the sense of its furnishing a consideration for the compromise which was entered into, but was used merely to make clear beyond question the character of the prospective damages for which plaintiffs were being paid and which they were releasing.

Assuming, upon this view of the contract, that plaintiffs had been allowed to introduce proof and that they had established every averment of their petition, their prayer for a rescission of the contract would still have had to be denied and they would have been remitted

for redress to an action at law; in which action, if defendant attempted to claim immunity from liability by reason of the compromise agreement, it might well be that plaintiffs could meet such claim with the argument that by reason of their "distinct understanding" the claim was not well founded.

For these reasons, the motion for a rehearing should be overruled.

### DISSENTING OPINION.

NORTONI, J.—Judge BLAND held in the original opinion that because appellants had failed to tender or offer on the face of the bill, the amount of the costs expended by the railroad company in settlement of the several cases pending, that the allegation of the bill was insufficient for that reason to entitle the appellants to the relief prayed. I could not concur in that view after having examined the authorities.

I found, in the case of Jervis v. Berridge, 8 Ch. App. Cases 351, Lord SELBORN, L. C., at page 356, stated the question for decision thus:

"2. That they had not, by their bill, offered to repay to the demurring defendant certain sums paid by him to the Law Life Society, which they will be bound to repay if they succeed in obtaining the relief asked for."

On the following page, 357, the learned chancellor said on this proposition as follows:

"Upon principle there appears to be no good reason why a plaintiff in equity, suing upon equitable grounds, should be required to offer, on the face of his bill, to submit to those terms which the court, at the hearing, may think it right to impose as the price of any relief to which he may be entitled. Such an offer, if made, might be rendered nugatory at, or at any time before, the hearing, by the plaintiff dismissing his own bill; and, if it were not made, the power and duty of the court to make the relief, if any, which it might grant at the hearing, conditional upon proper terms, would be exactly the same. For this purpose, no submission on the part of the plain-

tiff is necessary, and if it were, it might properly be implied, if from no other part of the bill, from the ordinary prayer for general relief; which must at least mean that the plaintiff is desirous that everything which is necessary for the purposes of relief which he expressly prays, may be done. A contrary view would be attended with many difficulties."

And so the chancellor proceeds in discussing the question involved; and on page 358 says:

"The authorities appear to me to be consistent with this view. I confess I was surprised to hear the argument that in such a case as the present, an offer, upon the face of the bill, to repay the moneys expended by the demurring defendant, was necessary; my impression during many years of practice at the bar having always been to the contrary."

This case is cited and followed in Brown v. Norman, 65 Miss. 1. c. 380, in which case Judge COOPER, at page 378, said (and the case is in point):

"But in equity, the complainant does not necessarily rescind and sue; he may sue for rescission. He is required to restore the consideration, not, however, as a condition of acquiring the right to sue, but because of the equitable maxim that he who seeks equity must do equity."

In Barker v. Walters, 8 Bevan's Reps. 92, at page 96, the court, speaking of the alleged want of equity in the bill, says:

"The alleged want of equity is, that the plaintiffs have not, by their bill, offered to repay the money received by way of premiums on the policy."

And in discussing the assignment, on the same page, it is said:

"First, it is to be observed that the prayer of the bill is, that the policy may be delivered up to be cancelled, 'or that the plaintiff may be relieved in such manner as the court may think fit.' The plaintiffs, therefore, have by their bill, in effect, asked for relief on such

terms and in such manner as the court may see fit. *If it were necessary to make the offer, this, I own, seems to me to be sufficient.* It is, in form, submitting to the judgment of the court the terms on which the relief is to be granted. I think that this is sufficient, and it is, therefore, unnecessary in this case, to make any observations on the general principle, which has been much discussed of late in cases on account, namely, as to the necessity of submitting by the bill to account. The demurrer for want of equity must consequently be overruled."

These cases are quoted and followed by our Supreme Court in Paquin v. Milliken, 163 Mo. 79, l. c. 104-105-106, 63 S. W. 417, 1092, where Judge GANTT, in a very able opinion, at page 105, quoting Lord SELBORN, says:

"Upon principle, there appears to be no good reason why a plaintiff in equity, suing upon equitable grounds, should be required, on the face of his bill, to submit to those terms which the court at the hearing may think it right to impose as the price of any relief to which he may be entitled."

In the case last cited, Judge GANTT also quoted approvingly Whalen v. Reilly, 61 Mo. 565, where Judge SHERWOOD, speaking of the rule pertaining to equitable relief, says:

"Which finds its application, not in questions of pleading, nor by what the plaintiff offers to do therein, but in the form and frame of the orders and decrees, both interlocutory and final, whereby equitable terms are imposed as a condition precedent to equitable relief granted."

And on page 571 in the same case, the court, through Judge SHERWOOD, says:

"As the offer to pay was unnecessary, so also was its accompanying incident, the payment itself into court. The foregoing considerations clearly indicate how widely variant equitable is from legal procedure, and induce the belief that whatever the necessity for bringing

money into court on a technical plea of tender, where the action looks alone to the mere pecuniary recovery, *such necessity has no existence* and consequently furnishes no criterion in an instance like the present."

[See, also, Kanppan v. Freeman, 47 Minn. 491; Coolbaugh v. Roemer, 32 Minn. 445; Hammond v. Pannock, 61 N. Y. 145; Irwin v. Blake, 33 U. S. 18; Hanson v. Keating, 4 Hare's Rep. 1; Shuee v. Shuee, 100 Ind. 477; Could v. Cayuga Nat. Bank, 86 N. Y. 83, which cases sustain the views herein expressed.]

My opinion is, on this branch of the case, that it was not necessary for the appellants to offer, on the face of the bill, to return the costs paid out by the railroad company in settling the several cases mentioned, inasmuch as the bill sets up all the facts and seeks equitable relief on equitable terms, which evidence a willingness on the part of appellants to both do and accept equity and fully authorize the court to proceed, and upon the hearing, to impose upon appellants the doing of such equities as may appear just as the price of the decree it gives.

I am therefore persuaded upon this proposition that a rehearing should be granted.

2. On the second proposition treated in the opinion by the learned presiding judge, my views are that equity will entertain a bill to cancel a contract for non-performance of its covenants in a proper case and declare a rescission of such contract for the violation of the dependent covenants therein contained when it would be against conscience to permit one party to violate a covenant on his part and still hold the other party to a compliance therewith. This proposition is supported by abundant authority and is the principle upon which the appellants predicate their right of recovery. [Lincoln Trust Co. v. Nathan, 175 Mo. 32-44, 74 S. W. 1007; Grand Haven v. Waterworks Co., 57 N. W. (Mich.) 1075-1077; Farmers, etc., Trust Co. v. Galesburg, 133 U. S. 156-179; Pironi v. Carrigan, 20 Atl. N. J. Eq. 218.]

It is well settled in the law that where the acts and conduct of one party evince an intention to no longer be bound by the contract, the other party is justified in treating it as wholly abandoned. [Freete v. Burr, 9 L. R. C. P. 208; Withers v. Reynolds, 2 B. & Ald. 882; Mersey Steel & Iron Co. v. Naylor, Benson & Co., 9 App. Cases 434; Lake Shore, etc., Ry. Co. v. Richards, 30 L. R. A. (Ill.) 33.] In my opinion, the correct principle applicable to such cases was stated with great perspicuity by a learned English judge in Mersey Steel & Iron Co. v. Naylor Benson & Co., 9 App. Cases l. c. 443, where Lord BLACKBURN said:

"The rule of law, as I always understood it, is that where there is a contract in which there are two parties, each side having to do something (it is so laid down in the notes to Pordage v. Cole [4]) if you see that the failure to perform one part of it goes to the root of the contract, goes to the foundation of the whole, it is a good defense to say, 'I am not going to perform my part of it when that which is the root of the whole and the substantial consideration for my performance is defeated by your misconduct.'" And in determining whether the violated covenant or portion of the contract which a party has failed to perform goes to the foundation or root of the whole contract and pervades the entire consideration, it is (as said by the Supreme Court of Louisiana) "only necessary to consider whether the engagement is such that the contract would not have been entered into without it," and if it is, then its violation authorizes a suit for the dissolution or rescission of the contract. [Moreau v. Chauvin, 8 Rob. (La.) l. c. 160.] This principle, however, is so well established in the law as to require no further citation of authority. [Lincoln Trust Co. v. Nathan, supra.]

It will appear by reference to the contract set out in the bill that the grant made therein to the railroad is coupled with the following limitation: "But with the distinct understanding that neither the milling com-

pany nor railroad company shall be permitted to use such switch in front of plaintiff's property to stand cars thereon, but that the switch in front of their said property shall be kept open and free from cars except when in actual use as aforesaid." The precise language used in the contract, after reciting the settlement and payment of the $600 and costs of the several suits, is: "Said plaintiffs grant and convey to defendants full power and authority to use said switch freely in front of their said property for railroad and milling purposes, *but with the distinct understanding that neither the milling company nor railroad company shall be permitted to use such switch in front of plaintiff's property to stand cars thereon, but that the switch in front of their said property shall be kept open and free from cars except when in actual use as aforesaid.*" This grant of the right to use the switch, coupled as it is with the limitation thereon contained in the words: "but with the distinct understanding" creates by its acceptance on the part of the railroad company a covenant which goes to the entire consideration of the contract and which covenant is dependent and without which the contract would not have been made nor the grant of authority therein contained, conferred. This appears quite clear to my mind from the reasoning of Judge MARSHALL in Lincoln Trust Co. v. Nathan, 175 Mo. 45-46-47, 24 S. W. 1007.

It is true that the case here under consideration is not as strong in the language employed, creating a dependent covenant, as the case last cited, but it certainly is in intention manifested, and such manifested intention is the controlling principle in such cases; and it seems to me that there is sufficient here in language, when coupled with the manifest intent of the parties, to bring this case within the same controlling principle asserted in the case supra. I am therefore of the opinion that it is unconscionable to hold the appellants to the contract and let the railroad company violate the provisions of the covenant, without a "distinct understand-

ing" of which it would not have been made. It seems quite clear under the authorities that this "distinct understanding" enters into and pervades the entire agreement and goes to the root and foundation of the contract, and that without it, no grant to the railroad company to use the switch would have been therein conferred, and that inasmuch as it is in the form of a limitation, coupled upon the grant itself, it thereby operates as a covenant on the part of the railroad on the good faith and fulfillment of which the entire agreement rested and that its continued and persistent violation by the railroad company in depositing cars on the switch in violation of its express terms, furnishes a proper cause for the appellants to come into this court and ask for a rescission of the whole contract upon equitable terms.

In a determination of this question, it is the duty of the court to place itself in the situation of the parties at the time and place the engagement was entered into and from the facts shown in the bill, indue itself with the facts and circumstances then within the contemplation of the parties. When we read the bill for this enlightenment, it seems to me that the facts there shown, clearly demonstrate that the grant contained in the contract would not have been made but for the covenant to so use the switch by not standing or storing cars thereon as to further reduce the value of appellants' property than was actually necessary, and that this covenant or "distinct understanding" was one without which the grant would not have been made.

In conclusion, it appears to my mind that the covenant contained in the grant to use the switch, depended upon the covenant and mutual covenant therewith, to use the switch in accordance with the limitation imposed and coupled upon the wording of the grant itself, which was tantamount to saying that the railroad company, by accepting under the grant, covenanted on its part that it would have no rights thereunder except it fulfilled its

part by keeping the covenant not to deposit cars on the switch track in violation thereof; therefore the covenant was concurrent and dependent, in such cases. The law is most tersely and accurately stated in 7 Amer. and Eng. Ency. Law (2 Ed.), 121, as follows:

"*Concurrent or Dependent Covenant.*—Where the conditions of a contract are such that the parties must perform their promises at the same time, they are known as conditions concurrent. Neither party is bound to do the first act, but each must be able and ready to perform his own, and the one who is ready and able to perform has a right of action against the one who is not. If the obligations of the parties are mutual and dependent, then the refusal of one to perform without sufficient excuse is equivalent to an abandonment of the contract and releases the other party from any duty to further recognize the obligations." [See also cases in point cited in notes, same page.]

It appears that upon appellants making the grant, a corresponding duty thereby arose and thereafter rested upon respondent railroad company, and the parties were therefore to perform their promise within the language of the text, supra, "at the same time," therefore the covnant is dependent; that is, every day the railroad company occupied the switch under the covenant of the appellants, it was to occupy it under its own covenant so as not to stand or store cars thereon, and in event of the railroad company's refusal to perform its covenant without sufficient excuse, under the language of the text, supra, it was "equivalent to an abandonment of the contract and releases the other party from any duty to further recognize the obligations." The railroad company's right to use the switch being concurrent with and dependent upon its covenant to keep it clear of standing cars and not to use it in clear violation of the authority which it asserted for its occupancy thereof, clearly constitutes a covenant dependent and not independent in that sense in which an adequate remedy at law exists.

But on the contrary, the two were mutual, concurrent and dependent covenants, the grant dependent upon the performance by the railroad company of its covenant to keep the track clear of standing cars, and the covenant of the railroad company so to do, dependent upon the covenant of the appellants contained in the grant to it of the right to occupy the switch.

I am therefore of the opinion that inasmuch as the contract would not have been made but for the "distinct understanding" whereby these dependent covenants arose, that such "distinct understanding" goes to the root and foundation and prevades the entire consideration of the contract, and therefore a bill in equity for its rescission on the principle above stated is a proper remedy. My own mind is persuaded beyond the semblance of a doubt to this conclusion after a most careful and thoughtful examination of the following among the most ably considered cases on the question in this country. [Lincoln Trust Co. v. Nathan, 175 Mo. 32; Grand Haven v. Waterworks Co., 57 N. W. (Mich.) 1075; Farmers, etc., Trust Co. v. Galesburg, 133 U. S. 156; Pironi v. Carrigan, 20 Atl. N. J. Eq. 218; 7 Amer. and Eng. Ency. Law (2 Ed.), 121, and cases cited in notes therein.]

I am of the opinion that the bill states facts entitling the appellant to equitable relief and therefore the motion for rehearing should be sustained.

It is proper to say that since preparing the above and foregoing memorandum opinion, the learned presiding judge has further considered the question and modified his original opinion, agreeing with my views on the first question referred to: i. e., holding that it was unnecessary for the appellants to offer on the face of their bill, to repay the costs expended by the railroad company in the settlement of the several lawsuits theretofore compromised, inasmuch as the bill prays for equitable relief upon equitable terms, which is universally re-

garded as sufficient in such cases. But he still adheres to the original opinion on the second question discussed: i. e., that the covenant is independent in its nature, on which adequate remedy at law exists and may be had, and therefore the bill is insufficient in failing to state a cause for equitable relief, and in this view the learned special judge concurs. In view of this concurrence of opinion, for which I entertain the very highest regard, emanating as it does from trained legal minds, and acumen, of such splendid accomplishments so far superior to my own, I have again considered the question and studied with care the very able opinion of our learned associate Judge Schnurmacher, who was called in under the provisions of the Constitution as final arbiter in view of the difference of opinion between the members of the court, and notwithstanding that opinion, I still find myself unable to recede from the views indicated in the above memorandum. Therefore, with a sense of the very highest respect for all, and to satisfy my own conscience only, I take the liberty of filing this memorandum of concurrence in the first, and dissent from the second proposition involved.

I am persuaded that the decision of this court is in conflict with the doctrine of Lincoln Trust Co. v. Nathan, supra, and therefore request that the case be certified to the Supreme Court for final determination.