PARSONS *et al.* v. THE KNOXVILLE FIRE INSURANCE COMPANY, *Appellant.*

### In Banc, March 3, 1896.

1. **Fire Insurance:** CONDITIONS OF POLICY : WAIVER BY AGENT.  In an action on a fire insurance policy, which provided that if the assured did not own the land on which the insured building was situated the policy should be void unless such fact appeared thereon in writing, it appeared that the plaintiff in his application for insurance did not claim to own the land and at the time so informed defendant's agent, and that notwithstanding such knowledge the agent issued the policy and plaintiff in good faith accepted it.  *Held,* that defendant could not claim a forfeiture of the policy for breach of the foregoing stipulation, although the policy provided that a waiver of any of its conditions by the agent should be indorsed thereon, and such indorsement was not made.

2. ———: ———: ———. An agent of an insurance company, who is authorized to issue, countersign, and deliver policies and to receive the premiums therefor, may strike out parts of a provision in regard to the keeping of a set of books by the insured on the latter making objection to such provision, and such action of the agent will be binding on the company.

3. ———: ———: ———. An insurance company may, by its acts and conduct, waive a breach of a provision of its policy requiring the insured to keep a set of books showing a complete record of business transacted by him.

4. ———: AGENCY. The fact that one is the authorized adjuster of an insurance company may be inferred from circumstances and course of dealing.

5. ———: ———: WAIVER. While the law will protect insurance companies against frauds, misrepresentations, and breaches of warranty, it will not lend its aid to support defenses founded upon their own errors and omissions when they have received the premium, delivered a complete and valid policy, and lain by without objection until a loss has occurred.

*Appeal from Mercer Circuit Court.*—HON. PARIS C. STEPP, Judge.

AFFIRMED.

*Ira B. Hyde, Hugh C. Ward,* and *O. H. Dean* for appellant.

(1) The court erroneously held that defendant's agent could waive, and in fact did waive, the condition in the policy of insurance in suit as to keeping books, etc. *Fire Ins. Co. v. Small,* 66 Fed. Rep. 490; *Sprague v. Ins. Co.,* 49 Mo. App. 423, and cases cited; *Fletcher v. Ins. Co.,* 117 U. S. 531; *Mensing v. Ins. Co.,* 36 Mo. App. 602; *Shoup v. Ins. Co.,* 51 Mo. App. 287; *Greenwood v. Ins. Co.,* 27 Mo. App. 412. (2) The court erroneously held that a substantial compliance with the condition in defendant's policy of insurance as to the keeping of books, etc., was sufficient. 1 May on Insurance, sec. 156; *Hollaway v. Ins. Co.,* 48 Mo.

Parsons v. Fire Ins. Co.

App. 6; *Ins. Co. v. Altheimer*, 25 S. W. Rep. (Ark.) 1067; *Ins. Co. v. Wilkinson*, 53 Ark. 353; *Ins. Co. v. Morgan*, 18 S. E. Rep. 191. (3) The court erroneously held that Griffith had authority to waive the forfeiture of defendant's policy of insurance, and in fact did waive such forfeiture. May on Insurance [3 Ed.], sec. 138a; *Waverley, etc., Co. v. Cooperage Co.*, 112 Mo. 383; *Mitchum v. Dunlap*, 98 Mo. 418; *James v. Stookey*, 1 Wash. 330; *Barre v. Ins. Co.*, 76 Iowa, 611; *Hollis v. Ins. Co.*, 65 Iowa, 454; *Ins. Co. v. Lawrence*, 4 Metc. (Ky.) 9; *Weed v. Ins. Co.*, 116 N. Y. 106.

*H. J. Alley* and *H. G. Orton* for respondents.

(1) The agent of defendant was advised of the condition of the title, and the policy having been issued with such knowledge, the company can not, after loss, claim a forfeiture by reason of the want of title. The knowledge of the agent, Roberts, was the knowledge of the company. *Combs v. Ins. Co.*, 43 Mo. 151; *Haywood v. Ins. Co.*, 52 Mo. 181; *Plankington v. Ins. Co.*, 55 Mo. 172; *Frank v. Ins. Co.*, 42 Mo. 457; *Breckenridge v. Ins. Co.*, 87 Mo. 71; *Thomas v. Ins. Co.*, 20 Mo. App. 151; *Robert v. Ins. Co.*, 26 Mo. App. 92; *Spratt v. Ins. Co.*, 13 S. W. Rep. 799; *Shafer v. Ins. Co.*, 10 N. W. Rep. 381; *Ins. Co. v. Williams*, 48 Am. Rep. 474; 1 Wood on Ins., sec. 90; *Manhattan Co. v. Weill*, 26 Am. Rep. 364; *Van Schaick v. Ins. Co.*, 64 N. Y. 434; *Wilson v. Ins. Co.*, 30 N. W. Rep. 401; *Dwelling House Co. v. Brodie*, 11 S. W. Rep. 1016; *Bidwell v. Ins. Co.*, 24 N. Y. 302. (2) The defendant having issued this policy with knowledge of facts that would render it void, is estopped from setting up such facts as a defense. This doctrine is well discussed in *Ins. Co. v. Weill*, 26 Am. Rep. (Va.) 365. (3) Parol evidence is admissible to show what

transpired between the agent and the assured. In most of the cases cited above the proof was by parol, but this question has been especially discussed in the following cases: *Ins. Co. v. Sorrel*, 25 Am. Rep. (Tenn.) 780; *Co. v. Throop*, 7 Am. Rep. (Mich.) 638; *Ins. Co. v. Wilkerson*, 13 Wall. 222; 2 Wood on Ins., 829, sec. 408. (4) The instructions asked by defendant and refused by the court did not properly declare the law. (5) The sixth instruction for plaintiffs was correct. The adjuster of defendant waived the alleged forfeiture on account of the failure to keep the books. He was shown the books, and afterward required of the plaintiffs the further presentation of their claim under the terms of the policy. These were facts which authorized the submission of this question of waiver to the jury. *Brown v. Ins. Co.*, 38 N. W. Rep. (Iowa) 135; *Oshkosh Gaslight Co. v. Ins. Co.*, 37 N. W. Rep. (Wis.) 820; *Marthinson v. Ins. Co.*, 31 N. W. Rep. (Mich.) 291; *Holly v. Ins. Co.*, 21 N. W. Rep. (Iowa) 774. (6) The agent had a right to change the policy. 1 May on Insurance, 129. *Ins. Co. v. Kelly*, 15 Am. Rep. 612. The company was informed at the time of the manner of keeping their books, and notice to the agent of a condition which renders a policy void, waives such condition. 1 May on Ins. [3 Ed.], sec. 130; *Ins. Co. v. Brown*, 15 N. E. Rep. (Ill.) 167.

## DIVISION ONE.

BRACE, P. J.—This is an action on a fire insurance policy, dated October 12, 1891, for $2,500, for the term of one year from date; $400 on storehouse, $2,000 on stock of merchandise, and $100 on store furniture and fixtures. The property was destroyed by fire on the eighth of March, 1892. The plaintiffs obtained judg-

ment below for the sum of $2,677.50, the full amount of the policy and interest, and the defendant appealed.

The policy consisted of two papers, a policy in the usual form, and a paper attached, headed "Country Store Form," called a "sticker." To defeat a recovery the defendant relied upon the following condition, contained, among others, in the policy proper: "If the assured is not the sole, absolute, and unconditional owner of the property insured, or if the property be a building, and the assured be not the owner of the land on which said building stands, by title in fee simple, and this fact is not expressed in the written portion of the policy   *   *   *   this policy shall be void." And upon the following covenants and conditions contained in the "sticker:"

"The assured under this policy hereby covenants and agrees to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash and on credit, together with the last inventory of said business; and further covenants and agrees to keep such books and inventory securely locked in a fire-proof safe at night, and at all times when the store mentioned in the within policy is not actually opened for business, or in some secure place, not exposed to a fire which would destroy the house where such business is carried on; and in case of loss the assured agrees and covenants to produce such books and inventory, and in the event of a failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained thereon for any such loss."

The only errors assigned are upon the action of the court in giving certain instructions for the plaintiffs, and in refusing others asked for by the defendant. These instructions are long and numerous, and need

not be set out in detail, in order to manifest the rulings of the court of which the defendant complains.

I.  The court by its refusal to give instructions 2 and 3 for the defendant, and in giving plaintiffs' instruction numbered 8, in effect held, that although the plaintiffs were not the owners of the land on which their building was situate, yet if they were the owners of the building, and had the right to remove the same, and at the time of making the application for insurance informed defendant's agent that they did not own said land, and if the defendant, notwithstanding such knowledge, issued said policy, and plaintiffs in good faith accepted such policy "not knowing of said condition therein, and did not know (or by the exercise of ordinary care might not have known) of such condition until after said loss, then the defendant is estopped from claiming said policy void by reason of their non-ownership of said land."  And in so holding the defendant contends the court committed error, "because plaintiffs agreed that statements made in their written application for insurance should be incorporated into and form a part of the policy of insurance, as the basis upon which insurance was to be effected, thereby giving the defendant the right to rely upon such written statement; and, *second*, because the written statement made by plaintiffs could not be contradicted or overcome by parol evidence."

The application for insurance was made out by the agent of the insurance company, upon personal inspection of the risk, and signed by the plaintiffs, in which the name of the owner of the *building* is given as W. E. Parsons & Son, and in the long list of questions and answers that follow, occur the following:  "What did the building and land cost the present owner? $600 —  *  *  *  How long has building been owned by present owner?  Since it was built.—Is there any

incumbrance on building and land? No." These are
the only answers in the statement that can be said to
touch the question of the ownership of the land. The
defendant's agent, who made the survey and prepared
the application, and the plaintiff who signed it, both
testified as witnesses in the case (and no exceptions
were taken to their evidence) showing that the agent
was informed, and knew at the time the application
was made, and the policy issued, that the plaintiffs
were not the owners of the land on which the building
was situate, but that the same belonged to one Neal.
The policy proper contained no description of the prop-
erty insured, nor any statement in respect thereof, the
written portion being simply: "Sum insured $2,500.
Time, one year. Rate, 1 3-4. Premium, $43.75,"—
the number of the policy, and the dates fixing the term.
The written portion of the "sticker" under the heading
"Country Store Form" was as follows:

"$400.00. On their one story frame building,
with shingle roof, occupied by assured as a country
and general merchandise store, situated sec. 35, tp.
65, R. 25, lot 4, block 1, town of Goshen, country
of Mercer, state of Mo.

"$2,000.00. On their stock of merchandise,
consisting of dry goods, groceries, boots, shoes, hats,
caps, hardware, cutlery, notions, and such goods not
more hazardous as are usually kept for sale in country
stores, while contained therein.

"$100.00. On their store furniture and fixtures,
including iron safe, while contained therein."

From all which it appears that the plaintiffs did
not in fact in their application represent themselves to
be the owners of the land and were not estopped from
showing that the agent knew they were not such
owners, and in fact knew all about the title to the land
when the contract of insurance was made. The only

real ground of complaint the insurer has upon this score, is that its agent did not express the fact of such ownership in the written portion of the policy.

Under such circumstances, even if the ownership of the land had been a fact material to the risk, the court properly held that the defendant was estopped from claiming a forfeiture for a breach of this condition, so brought about, although the policy contained the further condition "that no officer, agent, or representative of this company shall be held to have waived any of the terms and conditions of this policy; unless such waiver shall be indorsed hereon in writing," and the "sticker" the following condition: "This policy is void if there are any terra cotta flues in the building. Agents of this company have no authority to waive these conditions." *Franklin v. Ins. Co.*, 42 Mo. 456; *Combs v. Savings, etc., Co.*, 43 Mo. 148; *Hayward v. Ins. Co.*, 52 Mo. 181; *Pelkington v. Ins. Co.*, 55 Mo. 172; *Breckenridge v. Ins. Co.*, 87 Mo. 62; *Hamilton v. Ins. Co.*, 94 Mo. 353; Wood on Fire Insurance, sec. 90; *Ibid.*, sec. 408, p. 829; *Barnard v. Ins. Co.*, 38 Mo. App. 106; *Cromwell v. Ins. Co.*, 47 Mo. App. 109; *Anthony v. Ins. Co.*, 48 Mo. App. 65; *Insurance Co. v. Wilkinson*, 13 Wall. 222.

II. Among the questions and answers contained in the application were the following: "Do you agree to keep books showing purchases, sales for cash or credit and last account of stock?" "Yes." "Do you agree to keep them in an iron safe, or in some building safely remote from this property at night and at all times the building may be closed?" "Yes, part of the time." It appears from the evidence, however, that the plaintiff who signed the application, told the agent who was filling it up, at the time, "that they had no iron safe, and that they did not keep a regular set of books, like

most bookkeepers, but such as enabled them to understand their business."

Roberts, the agent who took the application, sent it to George T. Kirk, the defendant's agent at Ridgway, Missouri, who was authorized to countersign and issue policies for the company, who thereupon issued the policy and "sticker" attached, each signed by him as such agent, and sent the same to Roberts, who delivered the same to plaintiffs, who objected to the clause requiring them to keep a complete set of books and to keep them securely locked "in a fire proof safe," etc., and thereupon Roberts took back the policy, sent it to Kirk, from whom plaintiffs afterward received it through the mail, with the words "and sales both for cash and on credit" and "locked in a fire proof safe," stricken out by a line drawn across them, as hereinbefore indicated.

Upon this state of facts the defendant claimed that the policy was void as to the merchandise, if the insured failed to keep a complete set of books showing all purchases and sales for cash and on credit, together with the last inventory of their business, and were unable to produce the same; upon the ground that neither Roberts, the soliciting agent, nor Kirk, who issued the policy, had authority to waive the condition requiring such books to be kept, and requested the court to so instruct the jury. This the court refused to do, but instructed that:

"If the jury find from the evidence that when the policy was delivered to plaintiff they refused to accept the same, because of the provisions on the slip of paper pasted on or attached to said policy, relating to the keeping of said books and inventory and preserving the same, and the said policy was by the agent of said defendant taken away for the purpose of having the same corrected in said respects, and the same, after it

was so corrected, and the said erasures and changes made on said slip, relating to the keeping and preserving of the books, was returned to plaintiffs by the agent who issued said policy, and the plaintiffs then accepted the same in good faith, then such changes do not render said policy void.

"    *    *    *    And on this issue the court instructs you that the purpose of keeping such books and inventory, so far as the defendant is concerned, was to enable defendant, by such books and inventory, to test the accuracy of the proofs of loss rendered by plaintiff, and to determine the amount of goods covered by said policy in plaintiff's store and burned. And if plaintiff's so kept their books and papers and inventory relating to their business that therefrom the amount of such goods on hand in their store at the time of the fire, and destroyed, could be fairly determined, then they have complied with the conditions of said policy relating to the keeping of their books and inventory.

"On this issue the jury are further instructed that under the terms of the policy and the application read in evidence, which are to be taken together, the defendant waived its right to insist that the books and papers should be preserved by keeping them at all times as stated in said policy, and it was sufficient to so keep them a part of the time, and if plaintiffs did so keep them a part of the time, and any of the books and papers of plaintiffs were destroyed by fire without fault of plaintiffs, then they were excused from the production to defendant of such as were destroyed."

And in so doing we do not think the court erred; for it is well established law that an agent of an insurance company authorized to make contracts of insurance in the name of his principal, to countersign, issue and deliver policies, and receive the premiums therefor, is clothed with the full authority of his prin-

cipal, and may waive conditions contained in the printed policy he issues to the insured, to whom he stands in the place of his principal in making the contract of insurance. This rule is well sustained by the authorities cited *supra*, to which many others might be added.

Eliminating, then, from the "sticker" the words stricken out by the agent Kirk, before the policy was finally accepted by the insured, the evidence shows a a substantial compliance with the conditions of the "Country Store Form," although the plaintiffs failed to keep an account of their cash sales, and by reason thereof not such a complete record of every transaction as would have been done in a properly kept set of books. The amount of goods on hand at the time of the fire, however, could be fairly determined; and was shown to be largely in excess of the amount insured thereon from the record kept by them of their transactions shown in evidence, from which the following statement is drawn.

The amount of money paid out by them was as follows:

| | | |
|---|---:|---:|
| On goods purchased as shown by their receipts | $1,675 30 | |
| Taken out by Buren Parsons | 125 00 | |
| This was the amount of money received by them from the time of taking the invoice to the fire.. | | $1,800 30 |
| This money was derived as follows: | | |
| Collected on credit sales as shown by books.. ...... | 672 56 | |
| On hand at time of inventory. .................... | 175 00 | |
| Amount paid in by W. E. Parsons.................. | 129 08 | 976 64 |
| The balance (proceeds of cash sales)......... | | 823 66 |
| The sales as per credit book...................... | | 1,008 87 |
| Cash sales as above..... .................... | | 823 66 |
| Total sales at retail....................... | | 1,832 53 |
| Deduct one-sixth or 20 per cent. profit............. | | 305 42 |
| Cost of goods sold. ......................... | | 1,527 11 |
| Goods taken out by W. E. Parsons................. | | 175 00 |
| Total cost of goods disposed of..... ......... | | 1,702 11 |
| Goods on hand as per invoice when they moved into new house (Sep. 1, 1891)............... ...... | | 2,746 80 |
| Bought to date of fire as per their bills. ........ ... | | 2,362 50 |
| Total......................... .......... | | 5,109 30 |
| Deduct cost of goods disposed of.................... | | 1,702 11 |
| Goods on hand at fire...................... ....... | | 3,407 19 |

VOL. 132 mo—38

It was well said in *Franklin v. Insurance Co.*, 42 Mo. *supra, loc. cit.* 461: "These foreign insurance companies may justly be held bound, to the fullest extent the law will allow, for the acts of their agents appointed to represent them in these agencies abroad. Parties dealing with them are induced to rely upon them as having competent authority for the transaction of the whole business which they undertake." And in *Combs v. Savings, etc., Co.*, 43 Mo., *supra, loc. cit.* 152: "When the disclosure respecting the solicited risk is frank and full, and the insurance company accepts it and appropriates the premiums, and a subsequent loss occurs, the indemnity contracted for, so far as the incidents of the original contract are involved, should be fairly met and realized to the assured." This is wholesome doctrine, and should be maintained.

We therefore conclude that the court did not err in giving plaintiff's instruction number 5, and in refusing defendant's instructions numbered 4, 6, 9 and 12.

III. By giving plaintiffs' instruction number 6, and instructions number 6 and 12 of its own motion in modification of instructions asked for by defendant, the court in effect instructed the jury that if they found that the plaintiffs failed to keep a set of books showing a complete record of business transacted by them including all purchases and sales for cash or credit, together with the last inventory of stock, and were unable to produce the same at the time of the fire or now, then the policy is void as to the stock of merchandise, and as to such stock the jury must find for the defendant, unless the jury further believe that the defendant waived forfeiture of said policy for such failure, by requesting and accepting proof of loss from plaintiffs after said loss, and they were authorized to find that such forfeiture was so waived, if they found from the evidence "that one Griffith was the adjuster

of defendant, authorized by it to investigate, adjust, and settle said loss, and said adjuster, while investigating and attempting to adjust and settle said loss (if he did investigate or attempt to adjust or settle the same) ascertained and learned all the facts relating to the alleged failure of plaintiffs to keep a set of books and inventory, and to preserve the same, as required by the terms of said slip or sticker pasted in said policy, and after learning and knowing such facts required and requested plaintiffs to furnish proofs of loss or to correct proofs when furnished, and in compliance with such requirements and request of said adjuster, plaintiffs incurred expense in making or in correcting such proof and in making the same comply with the requirements of said adjuster, and if the jury further find from the evidence the said adjuster so demeaned himself toward plaintiffs as would lead a man of ordinary prudence to believe that he and said company still regarded said defendant bound by and liable on said policy.''

It is objected to this instruction that there was no legal evidence that Griffith was the adjuster of the defendant, or that he requested or accepted proofs of the loss after the fire.

The fire occurred on the eighth of March, 1892. Within a few days thereafter T. D. Griffith appeared upon the scene, representing himself as the defendant's adjuster, come to adjust and settle the loss, to whom plaintiffs exhibited their books and papers. After looking through them he asked if that was all they had, and then made them an offer. Evidence of this offer, however, being objected to on the trial, the evidence was withdrawn, and the fact of the offer can not now be considered. It is sufficient to say that he left without settling the loss, or making any objections to

the mode in which the plaintiffs kept their books. Afterward, the plaintiffs received the following letter:

"KANSAS CITY, KANSAS, March 18, 1892.
"*W. E. Parsons, Esq., Goshen, Missouri.*

"DEAR SIR:—I visited you this week at the request of the Knoxville Fire Insurance Company, of Knoxville, Tennessee, to ascertain the circumstances attending the fire which destroyed certain property of yours, said to be covered by policy number 164,183 of the Ridgeway agency of said company.

"I have made report of what I learned bearing upon the case, to the company; and now, without denying or admitting liability of the company under its policy, beg to refer you to the terms thereof for the further presentation of any claim you may have upon the company.

"I remain very truly yours,
"T. D. GRIFFITH."

Thereupon the plaintiffs had prepared and forwarded by their attorney, to the defendants at Knoxville, proof or their loss as required in the policy, which the defendant admitted on the trial was furnished it, on the twenty-ninth of March, 1892.

This proof was returned to the plaintiffs' attorney, who shortly after received a letter dated *April 26, 1892,* signed T. D. Griffith, Adjuster, in which he said:

"DEAR SIR:—On the 16th inst. I sent to you for W. E. Parsons & Son, the papers purporting to be proof of loss, so called, under their claim against the Knoxville Fire Insurance Company, together with objections thereto. Hearing nothing further from you, I now hand you as their attorney these objections * * *" Then follow, in the letter, the objections.

Thereupon Mr. Alley, plaintiffs' attorney, prepared, and on the thirtieth of April, forwarded to the

company at Knoxville, supplementary proofs of loss, concerning which it was admitted on the trial "that on May 8, 1892, the plaintiffs furnished to defendant a supplemental proof of loss which is here introduced in evidence, and that the said original proofs furnished (twenty-ninth of March, 1892) and the supplemental proofs fully complied with the conditions of said policy, written on said policy in lines thirty-seven to forty-three inclusive." On the same day (April 30) that Alley mailed the supplemental proofs to the company at Knoxville, he wrote Griffith at Kansas City, notifying him of that fact, and this letter the defendants had in their possession, and upon due notice produced it upon the trial. Shortly afterward Alley received a letter dated May 9, 1892, signed, T. D. Griffith, adjuster, requesting him to return the original proofs furnished the company by the plaintiffs, and soon thereafter received the following letter:

"KANSAS CITY, KANSAS, May 18th, 1892.

"*H. J. Alley, Esq., Attorney for W. E. Parsons & Son, Princeton, Mo.:*

"DEAR SIR:—I have before me papers claiming to be 'supplementary proofs of loss in the matter of the Parsons' loss at Goshen,' sent by you to the Knoxville Fire Insurance Company and by them to me.

"I suppose these papers were sent to cover the objections taken by me April 16th to 26th, to alleged proofs in said case.

"I object to this supplementary proof that it does not fully quote that which is simply referred to as country store form which is used by the company when insuring property of the character described. It is not accompanied by the lost inventory of the stock of merchandise described in the papers. It is not accompanied by plans and specifications of the building described or mentioned in said papers and we

are thus still unable to determine whether the value given is an actual or estimated or conjectural one. It does not make any deductions from cash value for trade discount or from depreciation. It does not show the application of the three quarter value clause which is made a part of all policies covering such property issued by the company. For the company I decline to receive these papers as proofs of loss, without waiving any of the conditions, stipulations, and requirements of any policy this company may have issued to W. E. Parsons & Sons.

"Truly Yours,

"T. D. GRIFFITH, Adjuster."

The defendant in its answer averred that it often requested the plaintiff to produce their books, inventory, etc. The evidence shows that such a request by the defendant was only made by the adjuster Griffith. Defendant served notice on the plaintiff to take his deposition, and produced in evidence the correspondence of plaintiff's attorney with him as adjuster. Upon a former trial no question was made but that Griffith was the defendant's adjuster, and although upon this trial the plaintiff could not produce direct or positive evidence of his authority, or of his handwriting, to the letters received in due course of business by mail, bearing all the earmarks of authority and regularity, yet it is manifest from the course of the business itself that he was the writer of those letters, and was the company's adjuster in this loss. How could he have come into possession of the first proofs of loss which had been sent to the company at Knoxville? How could he have come into possession of the supplemental proofs, also sent to the company at Knoxville, upon each of which he was enabled to prepare elaborate objections at Kansas City, which could only have been prepared with those proofs before him unless

they had been referred to him by the company? The business speaks for itself, and in our opinion furnished sufficient evidence to go to the jury upon the question whether Griffith was the defendant's agent authorized to adjust the loss.

And since their adjuster Griffith, upon inspection of the record of plaintiffs' business transactions, which they had kept and then produced to him, made no claim that the policy was forfeited by reason of their failure to keep and produce a set of books, kept in accordance with the original terms of the policy, but with full knowledge of the manner in which they had been kept; required them to furnish proofs of their loss thereunder, and after the first proofs had been furnished required them to furnish supplemental proofs, in order to do which in accordance with the requirements of his objections, the defendants found it necessary to go to the expense of employing an attorney to prepare them, all of which proofs were received by the company, and during all these negotiations no claim was made, either by the company or its adjuster, that the policy was forfeited for want of a compliance with this bookkeeping condition, it would seem that the case was brought fairly within the scope of the doctrine announced in these instructions, which has the support of much respectable authority. *Brown v. Ins. Co.*, 74 Iowa, 428; *Hollis v. Ins. Co.*, 65 Iowa, 454; *Marthinson v. Ins. Co.*, 64 Mich. 372; *Oshkosh Gaslight Co. v. Ins. Co.*, 71 Wis. 454; *Titus v. Ins. Co.*, 81 N. Y. 410; *Ins. Co. v. Grunert*, 112 Ill. 68.

Upon these and other authorities to the same purport, the action of the court upon these instructions might be sustained, even if the original bookkeeping condition had been existent and in force at the time of the fire, as a part of the insurance contract. But, as we have seen, the condition requiring the plaintiffs to

keep a complete record of the business transacted "including all sales for cash and on credit" had been waived by the defendant's authorized agent in the making of the contract; consequently, instead of the defendant, it was the plaintiffs who were prejudiced by these instructions, being thereby required as a condition of recovery to show a waiver by the adjuster after the fire, of a condition shown by the uncontradicted evidence to have been waived before the consummation of the contract, and of which it never formed a part.

We find no error in the action of the court below affecting the merits of the case, prejudicial to the defendant's rights. As has heretofore been said by this court, speaking through Judge HOLMES, "The law will protect the companies against frauds, misrepresentations, and breaches of warranty, but it will not lend its aid to support defenses founded upon their own errors or omissions, when they have received the premium, delivered a complete and valid policy, and lain by without objection until a loss has happened; it will not help them to accomplish a fraud." 42 Mo. 461. The judgment is affirmed. All concur.

IN BANC.

PER CURIAM.—The judgment of the circuit court is affirmed as directed in the foregoing opinion handed down in division number one. GANTT and SHERWOOD, JJ., concurring with BRACE, C. J., in the opinion; BARCLAY, J., in the result; MACFARLANE, BURGESS, and ROBINSON, JJ., dissenting.