MODERN WOODMEN OF AMERICA, Respondent,
v. ANGLE et al., Appellants.

St. Louis Court of Appeals, June 25, 1907.

(Opinion by Nortoni, J.)

1. PRACTICE: Judgments: New Trial: Modified Judgment. A trial court could, during the term at which a judgment was rendered, set it aside, make an additional finding of facts and enter a different judgment upon the evidence already introduced; this was not granting a new trial so as to require the issues to be tried again, although the order setting aside the decree recites that the court "sustained" the motion for new trial to a certain "extent."

2. EVIDENCE: Privileged Communications: Waiver. The privilege granted by section 4659, Revised Statutes 1899, respecting communications to a physician when consulted professionally may be waived so that the physician may testify to such communications.

   Where the holder of a life benefit certificate expressly waived the benefit of all laws disqualifying any physician from testifying "concerning any information obtained by him in a professional capacity," this was a waiver of the privilege so that in an action by the benefit society to cancel the benefit certificate, a physician could testify to the beneficiary's condition, giving information obtained by him from the beneficiary while consulting the witness in a professional capacity.

3. ———: ———: ———: Pleading. In an action to cancel a life benefit certificate on account of fraudulent statements as to the beneficiary's condition, the waiver of the beneficiary's right to exclude privileged communications to his physician could be shown by the plaintiff without pleading such waiver.

4. INSURANCE: Agency: Estoppel of Insurer: Knowledge of Physician. Where the physician of a benefit society filled out an application for a benefit certificate which the applicant signed, and where the physician knew the physical condition of the applicant as to whether the answers were true or not, such

Modern Woodmen v. Angle.

physician was the agent of the society, and the society, by his act, was estopped to assert that the answers contained in the application respecting the physical condition of the applicant were false; but where an answer contained a statement without the knowledge of the physician, material to the risk, the society was not estopped to assert its falsity.

5. ———: ———: ———: **Knowledge of Applicant.** Where the physician of a benefit society filled out an application blank, writing the answers to the questions without asking the applicant as to whether they were true, and the applicant signed the application without any knowledge of its contents, the statements contained in the application were the statements of the society and not of the applicant and the applicant could show that fact by parol testimony; this doctrine obtains in relation to insurance contracts notwithstanding the general rule that one who signs a document in the absence of fraud will not be heard to say that he has not read it, and the rule that parol testimony is inadmissible to vary a written contract.

6. ———: ———: **Estoppel of Insured.** An application for a benefit certificate in a benefit society made untrue statements material to the risk and a copy of such application was attached to the certificate and the insured signed an agreement to accept the certificate on the conditions contained therein; the certificate expressly referred to the application and stated that it was issued in consideration of the warranties therein contained, the insured kept the certificate and the copy of the application with the untruthful answers in his possession for several months; *Held,* he was afterwards estopped to deny a knowledge of what those answers contained so that the benefit society could maintain an action to cancel his policy on the ground of false statements by proving the falsity of the statements in the application.

7. ———: **Equity Practice: Tender.** In an action to cancel a life benefit certificate brought by the benefit society, where there was a prayer for general relief, a tender of the dues already paid was sufficient without a tender of interest, since the court of chancery could make a proper decree requiring it refunded.

(Concurring Opinion by Bland, P. J.)

1. ———: **Pleading: Waiver.** In an action to cancel a benefit certificate brought by a benefit society against the beneficiary on the ground that the application for the certificate contained false answers to questions therein, where the answer did not allege that the defendant was ignorant of the contents of the application or plead that the respondent waived the truthfulness of the answers, the sole issue was whether the answers were true or false.

Appeal from Louisiana Court of Common Pleas.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Matson & May* for appellants.

(1) Defendant Angle was a patient of Dr. Pearson, and therefore Dr. Pearson's testimony of what he learned of Angle's condition while treating him professionally was improperly admitted over Angle's objection. Section 4659, chap. 64, R. S. 1899; Gartside v. Insurance Co., 76 Mo. 446; Thompson v. Ish, 99 Mo. 173; Ex parte Gfeller, 178 Mo. 267; State v. Kennedy, 177 Mo. 129. (2) The plaintiff claims the right to introduce the evidence of Dr. Pearson on account of the following language in the application, to-wit:. "And I hereby expressly waive for myself and beneficiaries the privilege, or benefits of any and all laws which are now, or may be hereafter in force, making incompetent the testimony of, or disqualifying any physician from testifying concerning any information obtained by him in a professional capacity." Said provision is part of the contract, and if it constitutes a waiver of the statute referred to, then the plaintiff should have plead it as a waiver, and not having done so, could not take the benefit of it at the trial. Kansas City v. Walsh, 88 Mo. App. 271. "To make the issue of waiver, it should have been especially plead in reply." Gartside v. Insurance, 8 Mo. App. 592; Wirup v. Heinrichoffer, 52 Mo. 333; Keller v. Insurance Co., 95 Mo. App. 627. (3) Dr. Crewdson, the camp physician and agent of plaintiff, prepared the application of Angle and wrote the answers without asking Angle to answer them and therefore the plaintiff is bound by its agent's acts. Angle was not asked to answer the questions. Plaintiff's agent wrote and answered them on his own responsibility. Shotliff v. M. W. A., 100 Mo. App. 138; Bushnell v. Insurance Co., 110 Mo. App. 223;

Home Circle Soc. v. Shelton, 81 S. W. 84; Temmick v. Mut. Life Ins. Co., 72 Mich. 388; Pudritzky v. Sup. Lodge K. of H., 76 Mich. 428; Parker v. Insurance Co., 34 Wis. 363; Mechler v. Insurance Co., 38 Wis. 665; McDermott v. Modern Woodmen, 97 Mo. App. 636. (4) Before this suit was instituted it was the imperative duty of plaintiff to have tendered back to Angle the money he had paid, together with six per cent interest. Linz v. Insurance Co., 8 Mo. App. 371; Lavin v. Empire L. Ins. Co., 101 Mo. App. 438; Kern v. Legion of Honor, 167 Mo. 471.

*Benj. D. Smith, E. E. Campbell* and *Tunnell & Hart* for respondent.

(1) As to the evidence of Dr. Pearson, it is true that he was testifying to facts which came to his knowledge by reason of his professional relations with Angle, and in the absence of the stipulation in the application of Angle for membership in the respondent society, waiving the exemption of the statute, it would have been inadmissible, but the application which was offered in evidence contained a clause expressly waiving the disqualification of the statute, and this rendered the evidence admissible. This court and the other courts of this State have passed on like provisions of similar applications and have expressly upheld the same. Keller v. Insurance, 95 Mo. App. 627. (2) The statutory provision is a privilege conferred in its present application upon defendant Angle. The right of waiving a privilege must be as broad as the privilege itself. Gall v. Tower, 85 Mo. 249; Squires v. Chillicothe, 89 Mo. 226; Blair v. Railroad, 89 Mo. 334; Carrington v. St. Louis, 89 Mo. 208; (3) Also, the rule in Missouri with reference to actions on insurance policies as regards pleading of waiver is different from the rule in other cases, and the universal rule in this State is that in actions of

127 App—7

this kind waivers may be proven, though not pleaded. McCullough v. Insurance Co., 113 Mo. 616; Nickell v. Insurance, 144 Mo. 432; Andrus v. Insurance, 168 Mo. 151.

NORTONI, J.—This suit is in equity and seeks the cancellation of a benefit certificate issued by the plaintiff fraternal society to the insured defendant and payable in event of his prior death to the other defendants, who are the wife and daughter of the insured. It appears the insured defendant has departed this life since the appeal was perfected, his death has been suggested in this court, and the case now stands revived in the name of Amanda Angle, his widow, and administratrix.

It is alleged in the bill in substance, that the insured defendant procured the insurance by means of, several false and untrue answers to questions propounded to him by the medical examiner; that such answers were and are warranties on his part; wherefore the plaintiff society prays the certificate induced by and issued in reliance upon the truth of such statements, be cancelled and set aside for breach of the warranties contained in such untrue answers, etc.

The evidence on the part of plaintiff tended to prove that on August 31, 1902, the insured defendant, H. C. Angle, executed his application to the plaintiff society for membership therein and two thousand dollars insurance, payable in event of his prior death, to his wife, Amanda Angle, and his daughter, Myrtle Angle, one thousand dollars each. On the showing made in the application, Mr. Angle was accepted as a proper subject of insurance, and on September 22, the certificate of insurance for two thousand dollars was issued to him and he was duly adopted by the local camp as a member of the order. In order to obtain the issuance of the certificate mentioned, it was essential for the insured to undergo a medical examination by the camp

physician of the order and to give satisfactory answers to the following questions contained in the application. Such application, by its terms, and the terms of the certificate, was made a part of the contract of insurance. The questions and answers referred to, as they appear in the application, are as follows:

"Q. 15. Are you now of sound body, mind, and health, and free from disease or injury; of good moral character and exemplary habits? A. Yes.

"Q. 23a. Have you, within the last seven years, been treated by or consulted any physician or physicians in regard to personal ailment? A. Yes. b. If so, give dates, ailments, duration of attack and physician's or physicians' name and address? A. La Grippe, three months, one week, Dr. Crewdson, mild attack. c. Was recovery complete? A. Yes.

"Q. 33. Have you ever had any disease of the following named organs, or any of the following named diseases or symptoms? Consumption? A. No. Spitting blood or other hemorrhages? A. No. Bronchitis? A. No. Habitual Coughing? A. No. Lungs? A. No."

The insured resided with his family at Louisiana, Missouri. He was and had been for a number of years foreman of bridge carpenters for the C. & A. Railway Company, and during the months of June, July, August and September, 1902, was pursuing his occupation on the C. & A. Railway bridge over the Vermillion river near Pontiac, Illinois. Between thirty and sixty days prior to applying for this certificate, he had a hemorrhage while at work on the bridge mentioned. The facts with respect to this matter are substantially as follows: Dr. Pearson of Pontiac, Illinois, testified that the insured called on him with respect to the matter and informed him he had had a hemorrhage from the lung on that day, that he had been having night-sweats and a cough, and upon examination, he found him then to have a hectic appearance, elevated temperature, dull-

ness over both lungs, etc., and was suffering with pulmonary tuberculosis; that he advised him thereof, and to go to New Mexico.  One McAllister gave evidence that about this time, just prior to his taking the insurance, he met the insured on the street in Louisiana and upon asking him why he was at home, the insured stated that he had had five hemorrhages the week before and almost died.  A workman who occupied the same car at night with the insured for sleeping purposes, testified that about that time the insured had a troublesome cough which annoyed the others sleeping therein and that he would raise phlegm and some blood thereby.  Another fellow-workman testified that the insured showed him some blood on his hand on the day mentioned while working on the bridge.  He did not say, however, that the insured spit this blood, but the inference is it was the result of the hemorrhage mentioned.  There was evidence also tending to prove that Dr. Crewdson, his family physician, treated him for bronchitis about this time. It also appears that the insured spent three winters succeeding the issuance of the certificate in New Mexico, Texas and Colorado, on account of the favorable climate.

On the part of defendant, the evidence tended to controvert the principal facts above stated.  The insured admitted having the hemorrhage mentioned by Dr. Pearson while working in Illinois and admitted calling upon and consulting him thereabout and said Dr. Pearson prescribed for him, giving him a phial of medicine and advised him to go to New Mexico to take a rest.  He denied the hemorrhage was from the lungs, however, and denied that he had stated to Dr. Pearson that he was having night-sweats; denied having any cough other than a slight cold, etc.  He said that in raising a heavy timber on the bridge, on that occasion, he had strained himself and the hemorrhage was the result of this strain; that he had no lung trouble and although he had been spending the three past winters in

a climate regarded most favorable to consumptives, it was not because of lung trouble but because of his eighteen years continuous service on the railroad without rest. His system was run down and he needed a rest. He denied saying to McAllister that he had had five hemorrhages and almost died; insisted that he had never been sick a day in fifteen years, except the slight attack of lagrippe mentioned in the application and the alleged strain which caused the hemorrhage mentioned. Of the latter he said, after having consulted Dr. Pearson in Illinois, he returned to Louisiana and his wife called in Dr. Crewdson and he informed the doctor of the strain and how it occurred and also that he had spit some blood at the time. Dr. Crewdson, after an examination, announced there was nothing serious the matter with him, prescribed some medicine and departed. The insured returned to his work the following day. Other witnesses for the defense gave evidence that he was a strong and healthy man and had never been sick other than as mentioned by him.

The defense to the action set up in the answer, first, that Dr. Crewdson, the camp physician, conducted the examination and wrote all the answers to the questions and recommended his adoption with the full knowledge of his condition of health and of the facts above stated, and inasmuch as Dr. Crewdson was the agent of the society, it thereby waived the requirements of the several warranties mentioned, etc. The answer further avers, however, that at the time of making the application, the insured believed that the answers were true and that he was further assured of their truth by Dr. Crewdson. The evidence with respect to these matters shows quite conclusively that Dr. Crewdson had knowledge of insured's condition of health at the time and an admission by the doctor contained in a letter in evidence shows that he had treated the insured a short time before for a slight attack of bronchitis. The admissions of both

Dr. Crewdson and the insured are to the effect that Dr. Crewdson had treated him also for lagrippe, as mentioned in the application, and the insured had informed the doctor of the hemorrhage mentioned. This evidence does not go to the extent, however, of showing that Dr. Crewdson had any knowledge of the insured having consulted Dr. Pearson or any physician other than himself within seven years prior thereto, as contemplated in question twenty-three above set out. Dr. Crewdson does not admit that he knew of this consultation with Dr. Pearson and the insured said he did not think he had informed the doctor of this fact; while Mrs. Angle says she thinks her husband had communicated this fact to Dr. Crewdson, but was not positive about it. It appears that Dr. Crewdson was the family physician of the insured and had been for many years. The insured himself had enjoyed good health prior to the time mentioned, and all of the services, except as herein indicated, had been rendered by Dr. Crewdson to other members of his family. Dr. Crewdson was also, as said before, camp physician for the plaintiff society, and as such, its agent, and from the testimony of both Dr. Crewdson and the insured, it appears conclusively Dr. Crewdson did not propound the questions contained in the examination to the insured at the time of making the examination. The doctor explained that he was familiar with Angle and knew him to be a sound man and in good health and wrote the answers with his own hand, without propounding the questions, and Angle signed without reading the same. Dr. Crewdson was asked the following question: "I will ask you if you read over to Mr. Angle those questions and answers that you have written out there?" and he answered: "I must confess I did not all of them. Some of them, possibly I did, but my custom was not to read them." He further gave evidence as follows:

"I went over Mr. Angle carefully, as is my custom

in making these examinations, give him a thorough physical examination, examined his heart, liver, spleen, intestines, lungs, took his respiration, heart's action and pulse, and everything that was necessary to formulate in my mind an opinion of the man as to whether he should be accepted as a good risk for insurance. After satisfying myself thoroughly that he was all right physically and more than an average risk, I then sat down and wrote those answers. There is possibly one hundred and fifty questions in that application blank, more or less, it ought to be a good deal less, and the Modern Woodmen, by the way I am a member, requires you to do about five dollars' worth of work for one dollar——

⁘ "I am going to tell you why I made the examination as I did and why every examiner of the Modern Woodmen makes them in the same way. I didn't ask Mr. Angle specifically question by question, there, yes or no, and by the way, the same thing is asked and answered three or four different times, but getting about a dollar for five dollars worth of work, and being a tolerably busy man, I rushed the matter through and wrote them up as I considered specific answers to all those questions, not individually in Mr. Angle's case, but every case that came before me for examination I treated in exactly the same way, and during my term of office for eight years I never had any kick from the head physician, they all went through."

The testimony of the insured was to the same effect, that Dr. Crewdson did not ask and he did not make answers to specific questions. He signed the application without reading it. At the conclusion of the application and immediately above the insured's signature is the following recital and agreement:

"I have verified each of the foregoing answers and statements from one to thirty-six, both inclusive, adopt them as my own, whether written by me or not and declare and warrant that they are full, complete and lit-

erally true and I agree that the exact literal truth of each shall be a condition precedent to any binding contract issued upon the faith of the foregoing answers. I further agree that the foregoing answers and statements, together with the preceding declaration shall form the basis of the contract between me and the Modern Woodmen of America and are offered by me as a consideration for the contract applied for and are hereby made a part of any benefit certificate that may be issued on this application and shall be deemed and taken as a part of such certificate. That this application may be referred to in such benefit certificate as the basis thereon and they shall be construed together as one entire contract. And I further agree that if any answer or statement in this application is not literally true . . . that my benefit certificate shall be void. And any certificate which shall be issued to me in pursuance of this application shall be delivered to me after adoption and while in sound health and in pursuance of the by-laws of the society and I hereby expressly waive for myself and beneficiaries the privilege or benefit of any and all laws which are now or may be hereafter in force making incompetent of, or disqualifying any physician from testifying concerning any information obtained by him in a professional capacity."

At the conclusion of the evidence, the chancellor found that Dr. Crewdson, the camp physician, had full knowledge of the insured's condition at the time of making the examination; that he was the agent of the society in that behalf and that as he wrote the several answers complained of to the questions without first propounding the questions to the insured, in view of his knowledge of the facts, he thereby determined their materiality for the society and the society must be regarded as having waived the matter of the literal truth or untruth of the statements and warranties therein contained, and thereupon entered a decree for defendants, de-

clined to cancel the certificate, and dismissed plaintiff's bill. Whereupon the plaintiff filed its motion for new trial and upon its consideration, directed the attention of the court to the fact that Dr. Crewdson had no knowledge at the time of making the examination that the insured had consulted Dr. Pearson with respect to his hemorrhages less than sixty days before the application, and thereupon, at and during the same term of court, the record discloses as follows:

"Now at this day come the above parties by their respective attorneys, and plaintiff's motion to set aside verdict and for new trial, now coming on to be heard, and the same being submitted and duly considered, is by the court sustained to the following extent; the court sets aside the decree, dismissing plaintiff's bill, and its general finding for defendants, and the finding that plaintiff assumed the risk insured against, and as an additional finding of fact, the court finds that the defendant, Henry C. Angle, in his application for insurance by defendant order did not truly and fully answer question contained in said application, to-wit: 'Have you within the last seven years, been consulted by, or consulted any physician or physicians in regard to personal ailment?' That within seven years prior to said application, said applicant had consulted Dr. J. J. Pearson in regard to said applicant's ailments, and said physician made an examination of said applicant and found applicant's ailments to be pulmonary tuberculosis; that in fact at the time of said application said applicant had pulmonary tuberculosis, and that this fact was unknown to plaintiff's camp physician, who examined applicant at the time of said application.

"It is therefore ordered, adjudged and decreed by the court that said applicant's certificate in controversy is null and void, and the same is hereby cancelled and held for naught."

1. It is insisted, first, that the court erred in setting aside its first finding for defendants and entering a second decree for plaintiff without a retrial of the issues. It is argued that the court granted a new trial and in such circumstances a new trial must be had. There can be no doubt, under the authority of Hurley v. Kennally, 186 Mo. 225, had the court granted and ordered a new trial, it would have been error to have entered a new and different judgment in the case without a retrial of the issues, as was there adjudged. In the case now under consideration, however, no new trial was granted. All that the court did was to set aside what it deemed to be an erroneous finding and judgment and enter a new finding and decree for the adverse party on the evidence theretofore adduced on which it had given, in its opinion, an erroneous judgment of the law. All of these proceedings, the first decree, the order setting it aside, and the entry of the second decree, were entered at the same term of court and no one can or will attempt to controvert the familiar proposition that the court has plenary power to set aside its orders, judgments and decrees during the term at which they are entered and enter others, or correct orders or judgments in their stead. [Smith v. Perkins, 124 Mo. 50, 27 S. W. 574; McGurry v. Wall, 122 Mo. 613, 27 S. W. 327.]

By attention to the wording of the judgment above set out in full, it is obvious the court did not grant a new trial nor did it intend any such result. It is true the recitals therein evidence that when the motion for new trial came on to be heard and was submitted, it was duly considered "by the court *and sustained to the following extent*" and the extent to which it was sustained follows: (quoting from the judgment) "The court sets aside the decree dismissing plaintiff's bill and its general finding for the defendants and the finding that plaintiff assumed the risk insured against, and as an

additional finding of fact, the court finds that the defendant, Henry C. Angle, in his application," etc., and proceeds to find that the plaintiff is entitled to a cancellation and decreed that the certificate be cancelled.

On these facts disclosed by the record, there is no doubt whatever that the court was amply justified in proceeding as it did on the most familiar principles with respect to the power of the court during the term over its judgments, and in no respect does the case fall within the rule of Hurley v. Kennally, supra, for here no new trial was granted. Indeed, there was no purpose for granting one on the facts in the record. The court had the entire case in its breast and upon discovering its error of law, only sought to give a new judgment and correct its erroneous conclusion on the facts. The assignment will be overruled.

2. The testimony of Dr. Pearson with respect to Mr. Angle having consulted him professionally and his examination, diagnosis, etc., that Angle was suffering from pulmonary tuberculosis, was admitted over defendants' objection and exception, as violative of section 4659, Revised Statutes 1899, declaring such matters privileged. Upon applying for the insurance, the insured agreed in writing to waive the rights of himself and beneficiaries in this respect, and it was under this waiver the court admitted the testimony. The waiver mentioned is as follows: "I hereby expressly waive for myself and beneficiaries the privilege or benefit of any and all laws which are now or may be hereafter in force making incompetent of, or disqualifying any physician from testifying concerning any information obtained by him in a professional capacity." This identical question was fully considered by this court under a like waiver agreement contained in an application for life insurance in Keller v. Home Life Ins. Co., 95 Mo. App. 627, 69 S. W. 612, and it was adjudged a party could waive for himself and beneficiaries named by him in the policy,

the personal privilege conferred by the statute supra. It is unnecessary to enlarge upon the subject. Besides the case cited, see also an authority of great merit, Adreveno v. Mutual Reserve Fund Life Assn., 34 Fed. 870; and on the subject generally, Thompson v. Ish, 99 Mo. 160, 12 S. W. 510.

It is suggested, however, in this case, that the plaintiff should have pleaded this waiver in its bill or reply. We are not impressed with this argument. While it is generally true that a party desiring to avail himself of a waiver of a substantial provision in a contract, should plead the same, that doctrine is not applicable to insurance cases in this State; or at least the rule with respect thereto is satisfied by an allegation of full performance of all conditions of the policy, so as to authorize proof of the waiver, etc. [McCullough v. Phoenix Life Ins. Co., 113 Mo. 606, 21 S. W. 207.] However that may be, the doctrine invoked by the defendants here does not go to the extent of requiring the plaintiff to plead the defendants' waiver of this statutory privilege by his agreement to that effect. The principle involved in the doctrine that a waiver should be pleaded is one of common justice, to the end that the adverse party may be advised of the nature of the causes he is called upon to meet, for if, perchance, proof of compliance with conditions is not to be made, the opposite party is generally entitled to know the reason therefor and what act of his is relied upon as sufficient to dispense with such formal proof. Now it is obvious that this principle is not pertinent and could have no influence here, for the party has, by his express agreement, as one of the considerations for the insurance, relinquished or waived for himself and those claiming through him, this privilege, and he and his beneficiaries are charged with full knowledge with respect to the matter. Under these circumstances there is no reason for invoking the application of the rule with respect to pleading a waiver. The insured

and his beneficiaries are possessed of knowledge just as full and complete on the subject, in virtue of the express agreement in that behalf, as they would be by positive averment in the pleadings to that effect, and as much so as if the agreement were made during the trial, that this privilege should be waived and the testimony of Dr. Pearson received.

3. a. We come now to examine the merits of the controversy. By giving attention to question fifteen and the answer thereto above stated, it appears that if the answer was false, it was false in that it stated the insured was then of sound body and health and free from disease. It is clear beyond controversy on the proof, that Dr. Crewdson, the examining physician, had full and complete knowledge with respect to these matters at the time of writing the answers thereto.

b. By reference to question thirty-three and the answer thereto, it appears that if the answer was false at all, its falsity consisted in the answer that insured had no disease or symptoms of consumption, spitting of blood, or other hemorrhages, bronchitis, habitual coughing, or disease or symptoms of disease of the lungs. It is likewise certain on the proof that Dr. Crewdson, at the time of writing these answers, was in full possession of all the facts with respect to these matters. It appears he had recently before treated the insured for bronchitis. Insured had communicated to him within sixty days theretofore, the fact that he had suffered a hemorrhage, of some kind, at any rate, and he subjected him to a physical examination. On this feature of the case, it is therefore wholly immaterial whether the insured answered the questions or not or whether these answers were literally true. Under the authorities, Dr. Crewdson, then acting in the capacity of camp physician, was then and there agent of the society with authority to determine the materiality of the answers and waived the society's rights with respect thereto, and therefore,

if possessed of the facts with respect to all these matters, as he was, he wrote the answers as he deemed them material, the insurance society will be deemed to have waived its right with respect to the answers being literally true in that regard, and is estopped from asserting their untruth as a breach of the warranties. [Shotliff v. Modern Woodmen, 100 Mo. App. 138, 73 S. W. 326; Combs v. Hannibal Savings & Insurance Co., 43 Mo. 148; Thomas v. Hartford Ins. Co., 20 Mo. App. 150; Rissler v. Amer. Central Ins. Co., 150 Mo. 366, 51 S. W. 755; Parsons v. Knoxville Ins. Co., 132 Mo. 583, 31 S. W. 117, 34 S. W. 476; Montgomery v. Lebanon Town. Ins. Co., 80 Mo. App. 500; Mechler v. Phoenix Ins. Co., 38 Wis. 665; Williams v. Bankers & Merchants Ins. Co., 73 Mo. App. 607; Ins. Co. v. Wilkinson, 80 U. S. 222; 13 Wall 222; 2 Bacon on Benefit Societies (3 Ed.), sec. 428.]

Now with respect to question twenty-three, and the answer thereto as follows: "Have you, within the last seven years, been treated by or consulted any physician or physicians in regard to personal ailment? A. Yes, b.—If so, give dates, ailment, duration of attack, and physician's or physicians' name and address? A. La Grippe, three months, one week, Dr. Crewdson, mild attack. c.—Was recovery complete? A. Yes." The answer given to this question is false in that it concealed a portion of the truth by not disclosing that the insured had consulted Dr. Pearson at Pontiac, Illinois, within sixty days prior thereto. Under the stipulations above set out, and contained in the application as a basis upon which the proposal of insurance was accepted and the contract issued, the full and complete truthfulness of this and other answers is constituted a warranty on the part of the insured. The truthfulness in this respect operates in the nature of a condition precedent and the answer must be absolutely true, otherwise the policy procured thereby is void. It is wholly immaterial

whether the answer is material to the risk or not.   But be that as it may, in the absence of a statute to the contrary, as in this case, the answer is material to the risk, for the society is entitled to know the truth with respect to the insured consulting a physician, if it so requires, that it may communicate with such physician, if deemed important, and ascertain the facts to the end that it may determine whether or not it will contract the insurance.   [McDermott v. Modern Woodmen, 97 Mo. App. 636, 71 S. W. 833; Aloe v. Life Assn., 147 Mo. 561, 49 S. W. 553; 1 Bacon Ben. Soc. (3 Ed.), sec. 230a.]   Nothing in Dr. Crewdson's testimony shows that he was at any time informed of Mr. Angle having consulted Dr. Pearson or any other physician than himself. The insured himself said that while he informed Dr. Crewdson of the hemorrhage, he did not think he informed him of having consulted Dr. Pearson.   It is true Mrs. Angle said she thought he did.   The chancellor on this evidence, found the fact to be that Dr. Crewdson had not been informed thereabout and therefore did not waive a truthful answer to this question, for the reason he had no information of the facts on which to determine whether or not it was material.   The finding that the society did not waive the full and true answer mentioned will be approved.

It is argued, however, that as the evidence of Dr. Crewdson and the insured shows conclusively the question was not propounded to the insured by the medical examiner and the insured in fact gave no answer thereto but signed the application without reading it and without actual knowledge of its contents, then its warranty does not obtain, and authorities are cited to the effect that under such circumstances, the application, as has been said, is the act of the company and the statements therein are the statements of the company and not of the insured. The doctrine is, the company is estopped by such act of its agent to assert otherwise.   [Bushnell v.

Insurance Co., 110 Mo. App. 223, 85 S. W. 103; Ormsby
v. Laclede Farmers, etc., Insurance Co., 105 Mo. App.
143, 79 S. W. 733; Insurance Co. v. Wilkinson, 80 U. S.
222; 13 Wall. 222; Temmink v. Met. Life Insurance Co.,
72 Mich. 388; Parker v. Amazon Insurance Co., 34 Wis.
363. See also 2 Bacon on Ben. Soc. (3 Ed.), sec. 427-
428.] Now the rule announced in those cases seems to
be at variance with two other fundamental doctrines of
great solemnity. It is elementary in the law of con-
tracts that when one can read, he must read, and if he
signs a document in the absence of imposition, fraud or
deceit, he will not be heard to say that he did not know
what was in the paper he signed. He is bound by the
contents, whether he read it or not, and it seems the doc-
trine has been properly applied to insurance cases of the ·
nature of this one, by courts of the very first authority.
[See N. Y. Life Assn. v. Fletcher, 117 U. S. 519; Hern-
don v. Triple Alliance, 45 Mo. App. 424; Ryan v. World
M'ut. Insurance Co., 41 Conn. 168.] It is equally true
that the application of the doctrine first above mentioned
conflicts in many cases with the rule that parol testimo-
ny is inadmissible to vary, explain or modify the terms
of a written contract, complete and unambiguous on its
face. [Insurance Co. v. Wilkinson, supra.] It seems,
however, insurance companies have so incumbered their
contracts with provisions and stipulations of various
kinds, without regard to whether they are reasonable
or unreasonable, and attempted to invoke those provis-
ions, whether pertinent or not pertinent, when viewed
from the standpoint of the real matters contemplated
between the contracting parties, until the courts, in deal-
ing with meritorious cases, in order to work out the
ends of complete justice, have been compelled to disre-
gard many well-established and fundamental rules and
administer relief in a proper case, no doubt on the the-
ory that the inherent justness of the result attained
would recompense whatever slight infringement of prin-

ciple was had in the particular instance. This practice has resulted in building up a system of rules or probably a department within our law which has become applicable to insurance only. And so it is we find, although a slight deviation from principle, the overwhelming weight of authority is to the effect the insured may show by parol the answers to the questions were not written by him, and that he did not actually know the contents of the application when he signed it. In order to escape the rule with respect to the introduction of parol testimony to vary the writing, it is said the doctrine goes upon the idea the writing in evidence was not the instrument of the party whose name is signed to it, and that it was procured under such circumstances as to estop the insurer from using it or relying upon its contents. [See 2 Bacon on Ben. Soc. (3 Ed.), sec. 458; Insurance Co. v. Wilkinson, 80 U. S. 222, 13 Wall. 222; Combs v. Han. Sav., etc., Co., 43 Mo. 148; Pudritzky v. Sup. Lodge K. of H., 76 Mich. 248.]

Now were this the entire case, the defendant would be entitled to a decree under the authorities supra. There are other facts in the case and provisions of the contract, however, which so influence the matter as to remove it entirely from the influence of the rule mentioned. It is true the insured signed the statement and agreement above set out, in which it is recited that "I have verified each of the foregoing answers and statements from one to thirty-six both inclusive, adopt them as my own, whether written by me or not, and declare and warrant that they are full and complete and literally true, and I agree that the exact, literal truth of each shall be a condition precedent, etc. It is said this too, was signed by him without reading. Whether these recitals would fall within the influence of the same rule as that with respect to the questions heretofore discussed, will not be considered. It is indeed a very grave question if the

insured is not estopped by his negligence in affixing his signature to the statement that he had read and verified the statements and answers, and submitting it in connection with those answers as a proposition inviting the society to enter into a valuable contract of insurance on the basis that such statement and representations were warranties on his part when he had neglected to read them. The society certainly had the right to rely and act upon this, if it had any rights in the premises whatever. Were the case one of any other character than that of insurance, no one would entertain any doubt upon a proposition so inherently just. Whether the insured read the statements and answers or not, he ought in common honesty to be estopped, by his negligence after signing such a statement, to dispute it. A consideration of this question is entirely unnecessary, however, to a proper disposition of the case, and with these observations, it will be waived and the judgment of the court predicated on other grounds, about which there can be but one opinion, under the authorities; that is to say, we ascertain from the record before us the important facts which must control the disposition of the case to be that the application and certificate refer to each other in such apt and appropriate terms as to render each document a part of the completed contract of insurance; that this insurance contract, as contemplated and agreed upon by the parties, consists, insofar as the rights here involved are concerned, of the application and certificate of insurance and a copy of the application is attached to the certificate and was at all times after its issuance, in the possession of the insured. And further, that although the application was made August 31st, the insurance contract was not completed until September 22nd thereafter, when the insured signed and agreed to the following indorsement thereon: "I hereby accept the above benefit certificate and agree to all the conditions therein contained." Among the things mentioned and printed

Modern Woodmen v. Angle.

across the face of the certificate is the following: "3. This certificate is issued in consideration of the warranties and agreements made by the person named in this certificate in his application to become a member of this society," etc. Section one of the certificate provides: "The application for membership in this society made by said member, a copy of which is hereto attached, and made a part hereof, together with the report of the medical examiner which is on file in the office of the head clerk and is hereby referred to and made a part of this contract, is true in all respects and that the literal truth of such application and every part thereof shall be held to be a strict warranty and to form the only basis of the liability of this society to such member and to his beneficiary or beneficiaries the same as if fully set forth in this benefit certificate." Now, whatever may be said with respect to the physician's failure to read the questions to him, we find Mr. Angle, on September 22nd, affixing his signature to and accepting the certificate, which in plain terms refers to the application and medical examination, a copy of which is then attached thereto, for the warranties of fact, as a basis upon which the insurance was made, and accepting it, too, upon a condition precedent that such warranties are true, and this certificate, with the false and untrue answers in the application annexed thereto, he retained in his possession for many months. Now it is well established in the law of insurance that when the agent has written down untrue answers to such questions, even though it be done without the knowledge of the insured, and the insured is furnished a copy of the application containing such untrue answers annexed to the policy, he is afterwards estopped from denying knowledge thereof. The doctrine, of course, proceeds upon the theory that it is the duty of the insured to use reasonable diligence in discovering the contents of the contract, and it is said, upon discovering the same, it becomes his duty to notify the

company of such fraud perpetrated upon both himself and the insurer. At any rate, if he held the policy, referring in apt terms to the warranties contained in the application annexed, for a reasonable time, he is conclusively presumed to know the contents of the contract and the untruthful answers plainly written in the application and is thereby estopped to assert that he had no knowledge on the subject. [2 Bacon, Benefit Soc. (3 Ed.), 428; New York Life Assn. v. Fletcher, 117 U. S. 519-534.] This being true, the insured will not be heard to say he was without knowledge of the untrue answers in this case. No court of conscience will permit him to sign and accept the certificate referring to and based upon the conditions and warranties in the attached application which are obviously false, and daily before his eyes, hold the same for months and then, in order to sustain the contract, say he was not aware of the untrue answers therein contained. It may be said further that by attention to defendant's answer, it appears that he avers that at the time of making the application, he believed all of the answers therein to be true. This seems to constitute a solemn admission on his part in the pleadings which would estop him from disputing knowledge of the answers given, when he pleads them to be true at the time. However that may be, the proposition with respect to holding the application with false answers thereto and the resultant estoppel therefrom, is well fortified in the authorities and sound on principle.

4. It seems the plaintiff society, upon learning of the insured's condition, refused to accept further payments from him on the insurance and tendered or offered to return those received. Upon the tender being declined, the amount of $7.25 paid by him was tendered and deposited in court at the time of the filing of the bill. Defendants now insist that this tender is insufficient in that it was plaintiff's duty to accompany it with

six per cent interest thereon as well. The court, in its decree, made no order respecting the tender as to the amount which should be repaid by plaintiffs to defendant. There is no doubt the plaintiff should refund the amount paid by the insured and six per cent interest thereon, up to the date the tender was made. This is not reversible error, however. Whatever may be the rule at law on the subject, it is not essential to make the deposit at all in equity as the chancellor is authorized, under the prayer for general relief, to dispose of the whole case on equitable terms, whether the money is deposited in court or not. It is certain that a court of equity will not cancel or divest property rights without requiring the adverse party to place the one whose right is cancelled or divested, *in statu quo.* [Haydon v. Railroad, 117 Mo. App. 76, 93 S. W. 833; Paquin v. Milliken, 163 Mo. 79, 104, 106, 63 S. W. 417, 1092.] As said by Judge SHERWOOD in Whelan v. Reilly, 61 Mo. 565, the court will affix equitable terms as the price of the decree it gives. So it is immaterial whether the interest was actually deposited or not. Plaintiff would be required to refund it or the certificate would not be cancelled.

The judgment with this modification, will be affirmed. The trial court is directed to take account of the interest at six per cent on the amount paid by the insured to plaintiff to the date of the tender and require the amount with such interest thereon, to be deposited in court for the use of the defendant's estate. It is so ordered. *Goode, J.,* concurs; *Bland, P. J.,* files the following separate opinion.

## SEPARATE OPINION.

BLAND, P. J.—The answer nowhere avers that Angle, the insured, was ignorant of the answers to the questions contained in the application for insurance. On the contrary we find the following statements in the answer in regard to these answers:

"Defendant further admits that the said defendant Henry Clay Angle, made and signed the application, a copy of which is attached to and made a part of plaintiff's petition, and marked 'Exhibit A,' and defendants further admit and state the facts to be true that said application with the exception of his signature thereto, was filled out and the writing on and in said application, was done by J. W. Crewdson, who was at said time the legally constituted camp physician of camp numbered 2067 located at Louisiana, county of Pike, and State of Missouri, that as such camp physician, the said J. W. Crewdson was acting for and in the capacity of said camp physician for the said plaintiff. That said camp physician of the said plaintiff was fully cognizant and aware of the true physical condition of the said defendant, Henry Clay Angle, and also the facts concerning Henry Clay Angle's condition was fully made known to said plaintiff and to said physician at the time that said application was filled out and at the time that said camp physician made his report concerning the same, a copy of which said report, defendant admits is filed with said amended petition and signed by the said J. W. Crewdson, camp physician Camp No. 2067 and dated the 31st day of August, 1902.

"Defendants further state that at the time of making said application that he believed that his answers and all the statements made in said application, were true and that he was further assured of the truth of the answers given by him to the questions contained in said application by the statement and examination of said camp physician of said plaintiff."

There is neither allegation of Angle's ignorance of the contents of the application or plea that the respondent waived the truthfulness of the answer to the questions therein. In that state of the pleadings, the sole issue was as to whether or not the answers to the questions in the application for insurance were true or false.

They were shown to be false, and for that reason the learned circuit judge rendered judgment cancelling the certificate of insurance. On this ground and this alone I think the judgment should be affirmed.